**560**

Ronald Gilbert TRAILL, Individually and on behalf of Certain Underwriters at Lloyd's, London, signatory to Lloyd's and British Companies Policies Numbered AN 2823, AN 2824, AN 2825 and AN 2773 et al., Plaintiffs,

v.

Joseph FELDER et al., Defendants.

Civ. No. A–41–69.

United States District Court,
D. Alaska.

Aug. 12, 1971.

Delaney, Wiles, Moore, Hayes & Reitman, Inc., Anchorage, Alaska, for plaintiffs.

Mike Stepovich, Fairbanks, Alaska, for defendants Felder & Fischer, d/b/a Barrow Air Service.

William V. Boggess, Fairbanks, Alaska, for defendant Allen J. Shontz.

J. L. McCarrey, Jr., Anchorage, Alaska, for defendant Wien Consolidated Airlines.

Merdes, Schaible, Staley & DeLisio, Fairbanks, Alaska, for defendant Kay B. Loll.

Groh, Benkert & Greene, Anchorage, Alaska, for defendant Lillian C. Grothius.

William M. Erwin, Anchorage, Alaska, for defendant Dell Dodge.

William G. Ruddy, Juneau, Alaska, for defendant Estate of George Wilson.

Rice, Hoppner, Blair & Associates, Fairbanks, Alaska, for defendant Bohrer.

Thomas E. Fenton, Fairbanks, Alaska, for defendant Estate of Robert J. Fischer.

## MEMORANDUM OF DECISION AND ORDER

PLUMMER, Chief Judge.

On April 14, 1969, plaintiffs, companies issuing insurance to Joseph Felder and Robert J. Fischer, d/b/a Barrow Air Service, (hereinafter referred to as the insured) brought this action seeking a declaration that they have no obligation to defend any suits brought in state court by defendants against the insured, or to pay any judgment rendered therein as a result of the crash of the insured's aircraft on November 21, 1968.

On August 21, 1970, plaintiffs moved for summary judgment on the ground that the aircraft was being operated in violation of the conditions of the policies at the time of the crash.

In its memorandum of decision and order of December 10, 1970, the court found that A.S. 02.05.130 (1962) [1] was a financial responsibility law or other law applicable to aircraft with respect to financial responsibility or liability arising out of the ownership, maintenance or use of aircraft. The court further found that Condition 6 of the insurance certificates [2] expressly contracted the insurers

---

[1] "No certificate may be issued to an air carrier nor may a certificate remain in force unless the carrier complies with the reasonable rules and regulations which the commission prescribes governing the filing and approval of surety bonds, policies of insurance, qualifications as a self-insurer of other securities or agreements, in reasonable amounts as the commission requires. The surety bonds, policies of insurance, qualifications as a self-insurer, or other securities shall be conditioned to pay, within the amounts thereof, any final judgment recovered against the carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance or use of aircraft under the certificate, or for the loss or damage to property of others. Nothing in this chapter relieves a certificate holder from any liability for negligence, whether or not it has complied with the requirements of this section."
This section was rewritten by the Legislature in 1970. *See* § 2 ch. 195 SLA. 1970.

[2] "FINANCIAL RESPONSIBILITY LAWS—COVERAGES, A B, C, D, and E.
Such insurance as is afforded by this Certificate under coverages, A, B, C, D and E shall comply with the provisions of any Financial Responsibility Law, or other law applicable to aircraft with respect to financial responsibility or liability arising out of the ownership, maintenance or use of aircraft during the Certificate period. However, the foregoing shall not apply to any type of coverage not afforded by this Certificate nor shall it apply to any amount or amounts in excess of the limit or limits of liability provided in the Certificate. The Assured agrees to reimburse the Underwriters for any payment made by Underwriters which Underwriters would not have been obligated to make under the terms of this Certificate but for the agreement contained in this paragraph."

to comply the insurance certificates to any financial responsibility law. Thus the court held, in Conclusion of Law No. 7, at p. 11, as follows:

"Exclusion 4 and the endorsement effective October 16, 1968 are void and unenforceable insofar as they attempt to deny payment of any final judgment recovered against the carrier Barrow for bodily injuries to or death of any person resulting from the negligent operation, maintenance or use of 1960 Aero Commander N3810C for the reason that they are contrary to the terms of Condition 6 contained in the policy, are contrary to the laws and regulations of the State of Alaska and contrary to public policy."

In their motion for clarification of memorandum[3] of decision and order of January 8, 1971, plaintiffs assert that even if A.S. 02.05.130 (1962) is a financial responsibility law, the plaintiff insurers should not be bound to pay any final judgment against any named assured in excess of the minimum coverage limits required by the statute and the regulations issued pursuant thereto.[4]

The issues raised in the "motion for clarification" are within the scope of the relief requested in the amended complaint for declaratory judgment, which seeks a declaration that plaintiffs "have no obligation to the defendants * * * to defend any action brought against said defendants or to pay *any judgment* rendered therein. * * *" (Emphasis added).

On June 30, 1971, plaintiffs filed a supplemental memorandum in support of their motion, which abstracted and called the court's attention to the deposition testimony of John F. Throne and Richard Buestad, Joseph Felder and Irving Igtanloc. Defendants have objected to the admissibility of these depositions.

Portions of the Felder and Igtanloc depositions cited to the court go to the possibility of contributory negligence, which is irrelevant to the issue of coverage raised in this declaratory judgment action. The testimony of Throne and

---

3. Treated, for procedural purposes, as a motion for relief from judgment under Rule 60(b), Federal Rules of Civil Procedure.

4. Pursuant to the provisions of A.S. 02.05.130 (1962), reasonable rules and regulations were promulgated and the same were duly published in 3 Alaska Administrative Code, Division 3, Chapter 3, Part 3780, Sections 3781–3783. At all times relevant hereto, these regulations were in full force and effect and provide in pertinent part:

"3781 *Insurance Required.* No air carrier shall operate in the State and no certificate shall be issued to any air carrier or remain in force unless and until there shall have been filed with and accepted by the Director a corporate surety bond, certificate of insurance, proof of qualifications as a self-insurer, or other securities or agreements, in the amounts prescribed in 3782 conditioned to pay any final judgment recovered against any such air carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance or use of aircraft in transportation, or for the loss of or damage to the property of others."

"3782 *Insurance, Minimum Amounts.* The minimum amounts referred to in 3781 are: (1) For bodily injuries to or the death of one passenger, $50,000.00; (2) For public liability, other than passengers, $50,000.00 per person and $100,000.00 per accident; (3) Property damage, $50,000.00."

"3783 *Forms and Procedure.*

* * * * *

(b) Filing: Certificates of Insurance, surety bonds, and notices of cancellation must be filed with the Director."

* * * * *

"(d) Refusal to Accept Insurance: The Director may, at any time, refuse to accept or may revoke his acceptance of any surety bond, certificate of insurance, qualifications as a self-insurer, or other securities or agreements, if in his judgment such security does not comply with the regulations or for any reason fails to provide satisfactory or adequate protection for the public. Refusal of acceptance of any certificate of insurance, surety bond or other securities shall not relieve the air carrier from compliance with the regulations."

Buestad, neither of whom was an agent of plaintiffs, is irrelevant to the issue of plaintiffs' knowledge of Alaska financial responsibility laws. Their testimony is relevant to the policies and practices of the Alaska Transportation Commission and was considered for this purpose, subject to all evidentiary objections properly preserved by the parties. In this respect, their testimony was cumulative with and tended to corroborate the documents contained in the files of the Alaska Transportation Commission (hereinafter referred to as the Commission).

Defendants have also moved for a continuance to allow time for further discovery pursuant to Rule 56(f), Federal Rules of Civil Procedure. It does not appear that further discovery would be useful in the disposition of this matter. Defendants cite two justifications for delay: (1) testimony of other witnesses is necessary to establish plaintiffs' knowledge of the provisions of A.S. 02.05.130 (1962) and the Commission's regulations; (2) testimony of Werner Bohrer will refute plaintiffs' contention that the passengers were aware of policy violations. The latter testimony would go to the issue of contributory negligence, which is irrelevant to the issue of coverage. Further testimony regarding plaintiffs' knowledge of A.S. 02.05.130 (1962) is unnecessary because the issue of whether A.S. 02.05.130 (1962) voids exclusions in excess of minimum financial responsibility requirements is one of law, which may be decided on the basis of the existing record. The motion for continuance is accordingly denied.

On November 22, 1966, the Commission issued Air Taxi Certificate No. 17–66 to Robert J. Fischer and Al Shontz, d/b/a Barrow Air Service, based upon proof of financial responsibility in minimum amounts for one aircraft, Cessna N4507F. The policy, AN 2452, was similar in all material respects to the policy of primary coverage in effect on the date of crash (AN 2824), and was in effect from May 11, 1966 to May 11, 1967. Following two reminders from the Commission to the insured, a second policy providing identical coverage was filed with the Commission. This policy, AN 2653, expired on May 11, 1968.

The only evidence of insurance in the Commission's file after May 11, 1968, and prior to the crash are two telegrams from John F. Throne & Co., the insured's broker. The first telegram is dated May 10, 1968, and was sent to one Michael Kelly with a copy to Joseph Felder. It noted that Cessna N3947G had been added to the existing coverage on Cessna N4507F (AN 2653) "renewing May 11." A copy of this telegram was filed with the Commission, evidently by the insured, on July 8, 1968. The second telegram was sent to Joseph Felder, and added the ill-fated Aero-Commander N–38100 to "existing coverages." It was filed with the Commission, again, presumably by the insured, on October 28, 1968.

It was not until December 1968, after the accident, that the Commission received copies of the four policies which were actually in effect at the time of the crash. Those policies were as follows:

AN 2823—effective May 11, 1968— May 11, 1969 ("Hull Insurance").

AN 2824—effective May 11, 1968— May 11, 1969 ("Aviation Liability Insurance Including Passenger Legal Liability") for minimum amounts required by A.S. 02.05.130 (1962) (primary coverage), or $50,000 per passenger.

AN 2773—effective January 1, 1968— January 1, 1969 ("Excess Aviation Liability Insurance Including Passenger Legal Liability").

AN 2825—effective June 10, 1968— June 10, 1969 (Additional Excess Liability).

The addition of the last two policies brought the total coverage to $2,400,000, or about 10 times the coverage of the primary policy, which met the minimum

requirements established by the Commission. The two policies of excess coverage incorporated the primary policy and were "subject to the same gross rate, terms, conditions and endorsements."

The insured's certificate was issued and kept in effect on the strength of representations of minimum coverage. At no time prior to the accident did the Commission have knowledge of the existence of the excess policies, and at no time was the insured ever informed that coverage in excess of that provided by the primary policy was a prerequisite to continued certification.

This court's decision of December 10, 1970, established that A.S. 02.05.130 (1962) is a compulsory financial responsibility law which renders unenforceable, as between the insurer and injured air carrier passenger, policy exclusions relating to negligent operations by the air carrier. Royal Indemnity Co. v. Olmstead, 193 F.2d 451 (9th Cir. 1951); *see generally* 1 Couch on Insurance 2d, § 13:9 at 543 (1959). The only issue raised by plaintiffs' "motion for clarification" is whether, under the specific law and policies involved in this litigation, the nullification of exclusions extends beyond the minimum coverage required by the Commission.

Plaintiffs cite seven cases which have limited the nullification of exclusions to the minimum coverage required by automobile financial responsibility laws, allowing the insurer to assert his defenses to avoid liability on any excess coverage. Defendants point out that five of these cases are distinguishable on the ground that the state law expressly excluded excess coverage from the provisions of the financial responsibility law [*see, e. g.,* A.S. 28.20.440(g)]

and/or the policies concerned limited liability incurred solely by reason of a financial responsibility law to the coverage specified in the Act. *See* Landis, for Use of Talley v. New Amsterdam Casualty Co., 347 Ill.App. 560, 107 N.E.2d 187 (1952) (policy limited recovery to extent provided in financial responsibility act); Hartford Accident & Indemnity Co. v. Kaiser, 242 Or. 123, 407 P.2d 899 (1965) (law excluded excess coverage from provisions of financial responsibility act); Behaney v. Travelers Ins. Co., 121 F.2d 838 (3d Cir. 1941) (policy limited coverage to requirements of financial responsibility law *and* the law excluded excess coverage from its provisions); Weekes v. Atlantic Nat'l Insurance Co., 370 F.2d 264 (9th Cir. 1966) (both law and policy excluded excess coverage); Farm Bureau Auto Ins. Co. v. Martin, 97 N.H. 196, 84 A.2d 823 (1951) (law and policy excluded excess coverage); *see also* Shapiro v. Republic Indem. Co., 334 P.2d 594 (Cal.App.1959), *affirmed on other grounds* 52 Cal.2d 437, 341 P.2d 289 (1959).[5] Of the other two cases cited by plaintiffs, one relied exclusively on cases in which the applicable statute and/or the policy excluded excess coverage. Iszczukiewicz v. Universal Underwriters Ins. Co., 182 F.Supp. 733 (N.D.Ohio 1960), aff'd 6 Cir., 290 F.Supp. 590. In the remaining case, Virginia Surety Co. v. Wright, 114 F.Supp. 124 (M.D.N.C.1953), the court discussed neither the wording of the statute nor the policy provisions.

Defendants argue that A.S. 02.05.130 (1962) establishes minimum but not maximum coverage and there is no indication in the statutes or policies in question that any excess insurance should not be included for the protection

---

5. It has been held that even statutory provisions excluding excess coverage from the terms of a financial responsibility law may not operate to limit liability incurred solely as a result of such law to the statutory minimum absent a clear provision in the policy so limiting the coverage. *See* Sandoval v. Chenoweth, 102 Ariz. 241, 428 P.2d 98 (1967) and Farmers Insurance Exch. v. Rose, 411 F.2d 270 (9th Cir. 1969) modifying Weekes v. Atlantic Nat'l Ins. Co., 370 F.2d 264 (9th Cir. 1966). California has taken a similar position. *See* Rocky Mtn. Fire & Cas. Co. v. Allstate Ins. Co., 13 Ariz. App. 405, 477 P.2d 279 (1971) and General Ins. Co. v. Truck Ins. Exch., 242 Cal.App.2d 419, 51 Cal.Rptr. 462 (1966), holding that an insurer may limit his liability to the statutory minimums.

of passengers. The statute says that the policies provided shall be "conditioned to pay, within the amounts thereof, any final judgment." Moreover, the insurers could have limited their liability to the extent required by the financial responsibility law, but did not do so.

There are few decided cases dealing with exclusions and excess coverage in policies issued to common carriers required by law to show proof of financial responsibility to a regulatory agency as a condition of certification.

■ Where coverage in excess of minimum requirements is contained in a policy actually certified to the regulatory commission, exclusions should be voided to the full extent of coverage, absent a clear contractual provision limiting liability incurred solely as a result of the law to the minimum coverage required for certification. In such circumstances, the public is entitled to rely upon the assurances of coverage on file with the regulatory agency. Moreover, where the statute contains provisions similar to A.S. 02.05.130 (1962), giving the agency discretion to require proof of financial responsibility in excess of the minimum requirements, the court would have to speculate as to whether coverage less than that actually certified would have been found acceptable.

In Liberty Mutual Ins. Co. v. McDonald, 97 F.2d 497 (6th Cir. 1938) the court construed a Tennessee common carrier financial responsibility statute, which appears to have been almost identical to A.S. 02.05.130 (1962). The court held that the law nullified inconsistent policy exclusions and that the coverage suggested by the Commission was only minimum coverage. To the extent that the insurance policy actually certified to the Commission provided more liberal coverage it was held to be controlling.

*See also* Stanley v. Mowery, 201 Okl. 480, 207 P.2d 277 (1949).

Conversely, in Occidental Fire & Casualty Co. v. Keating, 276 F.Supp. 944 (W. D.Okl.1967) it was held that where a policy providing coverage in excess of the minimum requirements was not certified to the Commission, the limits of an endorsement *actually certified* were controlling.

■ In the instant case only two policies covering the ill-fated aircraft were ever filed with the Commission. Those policies, which were acceptable to the Commission, provided coverage in the minimum amounts required by the Commissioner's regulations. Any member of the travelling public making inquiry into the financial responsibility of Barrow Air Service would have concluded that in the event of an accident the most he or his representatives could recover from the insurance company would be $50,-000.00. The policies of excess coverage, which were required to meet a contractual commitment to another airline and to satisfy requirements for the use of Air Force facilities were never filed with the Commission.[6]

■ Although the excess policies were conformed to the terms of the basic policies on file with the Commission, there is no compelling reason for voiding the exclusions, should they be applicable, on any coverage in excess of the amount actually required by and certified to the Commission. The Commission was satisfied that the security provided was adequate for the protection of the public and defendants are receiving no less security than they would have been entitled to expect from an investigation of documents on file with the Commission.

The fact that the excess policies are conformed to the primary policy does not vitiate this result. AN 2824 (the primary policy) provides that the coverage "shall comply with the provisions

6. Air Force regulations cannot be equated with generally applicable financial responsibility laws, and certifications of coverage pursuant to such regulations do not void policy exclusions. Bequette v. National Insurance Underwriters Inc., 429 F.2d 896, 899–900 (9th Cir. 1970).

of any Financial Responsibility Law."[7] But the law was fully complied with when a policy of basic coverage was certified to, and accepted by, the Commission of the basic policy was of no furcomplied with, the conforming provisions of the basic policy was of no further consequence and the exclusions once again became operative.

Accordingly, it is hereby ORDERED:

1. Defendants' motion for continuance is denied.

2. Plaintiffs' motion for clarification is granted and the Conclusion of Law No. 7 of this court's opinion of December 10, 1970, is amended to read as follows:

"Exclusion 4 and the endorsement effective October 16, 1968 are void and unenforceable insofar as they attempt to deny payment of any final judgment within the limits of $50,000 per passenger as provided in policy No. AN 2824 and 3 Alaska Admin. Code, Div. 3, ch. 3, § 3782, recovered against the carrier Barrow for bodily injuries to or death of any person resulting from the negligent operation, maintenance or use of 1960 Aero Commander N3810C for the reason that they are contrary to the terms of Condition 6 contained in policy No. AN 2824, are contrary to the laws and regulations of the State of Alaska and contrary to public policy."

3. The court's opinion of December 10, 1970 is further amended by adding the following Conclusion of Law 7a:

"Certification by Barrow Air Service of a policy containing minimum coverage required by the Commission's regulations, and acceptance thereof by the Alaska Transportation Commission as proof of financial responsibility, constituted full compliance with A.S. 02.05.130 (1962). Condition 6 of AN 2824 conforming the policy to any financial responsibility law having been satisfied by certifi-

cation of minimum coverage to the Commission, it was of no further force and effect and was not incorporated into policy Nos. AN 2773 and AN 2825. Any defenses which may be available to the plaintiffs by reason of exclusions contained in the aforementioned policies may be asserted to avoid liability in any amount in excess of $50,000 per passenger."

---

7. Condition 6 continues:
   "However, the foregoing shall not apply to any type of coverage not afforded by *this certificate* nor shall it apply to

any amount or amounts in excess of the limit or limits of liability provided in *the Certificate*."