Anthony P. **CATANZARO**, Plaintiff,

v.

**MASCO CORP.**, Defendant.

Edward T. **MOLINARO**, Anthony P. **Catanzaro**, Plaintiffs,

v.

**RADIO CORPORATION OF AMERICA** et al., Defendants.

Edward T. **MOLINARO**, Anthony P. **Catanzaro**, Plaintiffs,

v.

**ROCKWELL INTERNATIONAL** et al., Defendants.

Civ. A. Nos. 4780, 75–103 and 75–169.

United States District Court, D. Delaware.

Feb. 17, 1976.

---

Anthony P. Catanzaro and Edward T. Molinaro, pro se.

Rodney M. Layton, of Richards, Layton & Finger, Wilmington, Del., for RCA in No. 75–103.

William O. LaMotte, III, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for Motorola in No. 75–103.

Jacob C. Kellem, of Connolly, Bove & Lodge, Wilmington, Del., for Masco

Corp. in No. 4780, Midland Corp. in No. 75–103, and Rockwell, Honeywell, GTE Sylvania, Raytheon and Magnavox in No. 75–169.

Bruce M. Stargatt, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for Fairchild Camera and Instrument in No. 75–169.

Douglas E. Whitney, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for Bendix in No. 75–169.

## MEMORANDUM OPINION

STAPLETON, District Judge:

Plaintiffs Molinaro and Catanzaro have filed some fourteen suits against at least twenty-four electronic equipment manufacturers and sellers alleging infringement of U. S. Patent No. 2,906,875, relating to a "station sampling radio".[1] Three of these suits, having currently a total of eleven defendants, are currently before this Court. In each, plaintiffs, proceeding *pro se,* have initiated extensive discovery which solicits information concerning a broad spectrum of electronic equipment.

The defendants have answered a portion of this discovery. They maintain, however, that it is unfair to require them to answer the remainder. Among other reasons for this contention, various defendants assert that (1) plaintiffs' version of the relevant scope of discovery so far exceeds any rational interpretation of the patent that response to the discovery as currently requested would involve an unnecessary expenditure of thousands of man hours and dollars, (2)

that the demand for irrelevant information unnecessarily poses difficult questions involving confidential and classified information, (3) that plaintiffs have, in some instances, sued defendants without any rational basis for believing they have infringed, and (4) that under any set of facts which might be developed through the requested discovery, they are entitled to summary judgment.

In response to motions for summary judgment which have been filed by four defendants and supported with briefs and affidavits, plaintiffs have taken the position that they should be entitled to their discovery before being forced to respond to these motions.

I now have before me a number of different applications relating to discovery and other matters. As hereafter indicated, I have concluded that only a portion of these matters should be resolved at this point.

## I. PLAINTIFFS' DISCOVERY

A review of the myriad of papers which have been filed and the various statements of positions made at the two conferences conducted by the Court in an effort to understand and resolve the discovery issues have convinced the Court that the scope and degree of complexity of these cases may be substantially different depending upon whether plaintiffs can validly claim that the patent-in-suit provides protection with respect to signal seeking receivers that stop in response to a received signal, remain stopped indefinitely, and automatically restart their sensing operation upon termination of that signal, and only upon such termination.[2] (As contrasted with

1. Claim 1 reads:

   In a signal-seeking receiver, power-operated means for tuning said receiver successively to signals within a frequency range of operation, means responsive to a received signal for stopping said tuning means, means to effect automatic restarting of said tuning means after a predetermined short time interval, whereby the tuning of the receiver proceeds automatically from signal-to-signal but stops for a short interval on each signal to permit the user to decide whether he desires that signal, and means operable by the user to prevent the automatic restarting of

said tuning means whenever the user desires that the receiver shall remain tuned to a signal then being received.

2. Plaintiffs' version of the scope of the patent, as it emerged upon questioning of the Court at the last conference, can be fairly stated as follows:

   The type of signal seeking radio receiver in which the receiver varies its tuning over a frequency range until it senses a signal being transmitted to it, whereupon it automatically suspends the variation and tuning in re-

signal seeking receivers which automatically restart their sensing operating only upon the expiration of a predetermined period or which restart their sensing operation on the expiration of a predetermined period or a termination of signal, whichever first occurs).

This suggests to the Court that the most efficient way of proceeding in these cases would be to address the following two issues before resolving the other discovery issues that have been posed:

1. Given the claims of the patent and the file wrapper, can the patent-in-suit be interpreted as covering a signal seeking receiver which automatically restarts its sensing operation only upon termination of signal? (An issue presented by defendants' objections to interrogatories and their application for a limitation of the scope of discovery. See, e. g., RCA's letter of January 14, 1976).

2. If so, is the patent-in-suit, as so interpreted, invalid under either 35 U.S.C. § 102 or § 103? (An issue currently presented by Raytheon's motion for summary judgment).

■ The defendants who assert that these questions must be answered in the negative maintain that these issues can be resolved as a matter of law on the basis of the patent-in-suit, acknowledged prior art, expert affidavits, and applicable statutory and case authority. This may or may not be true. If true, it will not be unfair to plaintiffs to resolve the issues before requiring defendants to respond to further discovery and thereafter to permit discovery to proceed with-

in an appropriately-narrowed scope.[3] While it may, of course, turn out that these issues cannot be resolved as a matter of law, I believe it wise to take the time to attempt to isolate the relevant issues.

■ The Court has, accordingly, decided to stay further discovery until it has an opportunity to consider these issues on an appropriate record. Plaintiffs have not as yet had an opportunity to file a brief and affidavits in response to Raytheon's motion for summary judgment, and they will be accorded the opportunity to do so in accordance with the schedule set forth in the order entered today.[4] While plaintiffs can be said to have had an opportunity to respond to the first question stated above in the briefing and argument on the objections to interrogatories, I consider defendants' request for a limitation of discovery to be more in the order of a motion for partial summary judgment regarding the scope of the patent and believe that an opportunity to file affidavits and a brief addressed directly to this issue is called for. Today's Order thus sets a schedule for plaintiffs' response and for replies from the defendants. If any defendant who has not yet procedurally posed these issues nevertheless has an interest in them, it may file its own response.

The parties should note that the schedule also makes reference to the proceedings on the motions for summary judgment which have been filed by Bendix, Rockwell and Magnavox on the ground of non-infringement. The situation is somewhat different with respect to these

---

sponse to that received signal. After a predetermined duration of pause or after termination of the received signal, the receiver resumes its tuning variation to seek another signal unless such resumption of tuning is prevented by a separate operation.

3. Plaintiffs correctly contend with respect to issue No. 2 that further discovery might produce facts relevant to the *John Deere* secondary tests. As the Third Circuit has recently observed, however, "Long felt need and commercial success are secondary considerations which may become factors in the determina-

tion of patent validity only when the decision as to obviousness is a close one." *W. L. Gore & Associates, Inc. v. Carlisle Corporation,* 529 F.2d 614 (Nos. 75-1162 and 75-1163, January 23, 1976). Such considerations, of course, play no part in deciding an anticipation issue.

4. Plaintiffs' response and Raytheon's reply should deal with all contentions made by Raytheon in support of its motion. If adequate time has not been afforded to any party, the request for extension should be made promptly.

defendants and further discussion is, accordingly, in order.

Each of these three defendants has filed sworn affidavits and answers to interrogatories stating that (with the exception, in the case of two defendants, of devices which have been manufactured for the United States Government and accepted by it pursuant to contracts containing an "authorization and consent clause"), they have not in the last six years manufactured, used or sold any signal seeking receivers coming within *plaintiffs'* construction of the scope of their patent.[5] As earlier noted, plaintiffs have asked, pursuant to Rule 56(f), for permission to take further discovery before being required to respond to these motions. In response to this request, the Court provided plaintiffs with three opportunities to file Rule 56(f) affidavits. See Court's Orders of December 9, 1975, December 11, 1975, December 29, 1975, January 6, 1976 and transcript of conference of January 21, 1976, C.A. 75–169, Doc. Nos. 81, 82, 108, 116. The Court specifically instructed plaintiffs to include in their Rule 56(f) affidavits any information they currently have suggesting that defendants had infringed their patent and the reasons why the plaintiffs could not present by affidavit facts essential to justify their opposition to defendants' motions. Plaintiffs ultimately filed affidavits which went beyond the conclusory infringement allegations of the complaint in only one area. See Doc. Nos. 95, 112, 127 and 141 and Transcript of January 21, 1976. Those affidavits (1) state that various industry directories indicate that Bendix, Rockwell and Magnavox manufacture electronic countermeasures equipment and ten other generic types of military equipment for foreign governments,[6] (2) express the opinion of plaintiff Molinaro, based on his "knowledge of electronics dating back to 1948" and certain trade journal articles, that these defendants "could not actively engage in the areas pointed out . . . without making, using and/or selling equipment which could function in a receiving mode of operation responsive to a received signal and then restart its tuning or sensing operation as a result of a 'termination of signal' or its equivalent" (3) identify fourteen electronic counter-measure devices which are said to illustrate this point, and (4) explain that this is a "highly secretive area" in which plaintiffs' ability "to determine the exact nature of facts regarding" infringement is "severely limited".

These defendants have responded to plaintiffs' affidavits with counter-affidavits describing the operation of each of the specific electronic counter-measure devices identified by plaintiffs and explaining why they are not within the scope of plaintiffs' construction of their patent.

To this description of the current state of the record, there needs to be added reference to the conference of January 21, 1976 in which the issues relating to infringement were somewhat narrowed. In the area of manufacture, use and sale for the United States Government, it was reported that the relevant portions of the government contracts of these three defendants had been produced for inspection and that each contained an

---

5. *Each defendant has filed affidavits of employees qualified by personal knowledge and investigation. Excluding U.S. Government contracts, the affidavits of these three defendants indicate the following. Bendix acknowledges that it has manufactured and sold signal seeking receivers, identifies them, and explains that all must be restarted manually. Doc. Nos. 55–70. Magnavox is in a similar position with respect to signal seeking receivers. Doc. No. 107. Aff. of Messrs. Robertson, Mayle and Lantz. Plaintiffs acknowledge that such devices are a part of the prior art and do not infringe. See Transcript of January 21, 1976* conference. Rockwell swears that it has not manufactured, used or sold any signal seeking receivers with either manual or automatic restart. Doc. Nos. 47, 130.

6. I. e., "Navigational Aids, Radio, Ground Ship-Based," "Electronic Scramblers", "Scanners, Horizon", "Radio Communications Equipment, and other 'receiving devices'," "Command Sys. & Equipment", "Infrared Equipment", "Navigational Receivers", "Radar Equipment, Airborne/Ground & Ship-based", "Sonar Equipment" and "Terminal Communications Sys.".

"authorization and consent clause". Plaintiffs acknowledged to the Court that their sole remedy with respect to defendants' U.S. governmental production was an action against the United States Government in the Court of Claims. See, e. g., *Stelma, Inc. v. Bridge Electronics, Co.*, 300 F.2d 761 (3rd Cir. 1962). Accordingly, discovery in this area need no longer concern us. So too, discovery with respect to the commercial signal seeking receivers *heretofore disclosed* by these defendants need no longer concern us. Plaintiffs conceded that a signal seeking receiver which does not automatically restart its sensing operations is a part of the prior art and does not infringe. Plaintiffs nevertheless maintain that they are entitled to take further discovery in the hope of finding infringing commercial signal seeking receivers as yet undisclosed and in order to determine whether there has been infringement in the area of the manufacture, use and sale of military equipment for foreign nations.

■■■ With respect to the area of commercial manufacture, use and sale, the affidavits before the Court indicate that (1) plaintiffs have *no* information whatever which would suggest that defendants have infringed in the area of commercial production, (2) plaintiffs can point to no reason why they have not discovered some indication of infringement in the commercial area over the period of at least six years defendants are alleged to have infringed and common sense would suggest that such information would have been and is readily available in the market place, if infringement has occurred, and (3) qualified affiants have sworn that no infringement has occurred. The Court can only conclude from this record that plaintiffs, insofar as they claim infringement in this area, have asserted and prosecuted their claims against these defendants without any substantial justification. While Rule 56(f) is to be liberally construed to prevent injustice to a party faced with a summary judgment motion, it is also designed to enable a court to avoid abuse of the discovery process, and necessarily assumes that there will be cases where the Court, in the exercise of its discretion, may deny the application for further discovery. *Donofrio v. Camp*, 152 U.S.App.D.C. 280, 470 F.2d 428 (1972); 10 Wright & Miller, *Federal Practice & Procedure* § 2741. I believe this is such a case insofar as it relates to the area of commercial manufacture, use and sale by these three defendants. Further discovery in this area will be denied.

■■ The record with respect to the area of manufacture, use and sale of military equipment for foreign governments presents a somewhat different question. It is reasonable to credit plaintiffs' assertion that information in this area is not readily available to them save through discovery of the defendants. While it is not so easy to credit plaintiffs assertion that Bendix, Rockwell and Magnavox cannot be active in the manufacture of any of eleven broad categories of military equipment without infringing the patent-in-suit, I am not, as yet at least, prepared to hold that the patent-in-suit could not reasonably be expected to have application at least in the field of electronic counter-measures equipment[7] or that plaintiffs do not believe, in good faith, that it is being so applied. Given the handicap of the holder of a patent having application in the military equipment field when he attempts to police his patent, it seems to me that a complete bar to discovery in the area of military equipment for foreign nations would be inappropriate at the present time. This conclusion does not, however, require the court to permit unlimited discovery of these defendants. The Court's obligation under Rule 56(f) is to enter an order which is "just" un-

---

7. This is the only area in which plaintiffs have offered any explanation of Mr. Molinaro's opinion. This has been done by reference to trade journal articles which explain in general terms the operation of electronic devices in the electronic counter-measures field.

der the circumstances and I cannot ignore the fact that plaintiffs' basis for believing infringement has occurred in this area is tenuous.[8] In order to assist the Court in entering a "just" order, these three defendants, if they wish to press forward with their motions for summary judgment at this time, are invited to propose some form of discovery which will provide some reasonable assurance that infringement has not occurred in the area of manufacture, use and sale of military equipment for foreign governments.[9]

In the alternative, these defendants may elect to hold their motions in abeyance until the Court has had an opportunity to consider the two issues set forth above. In this connection, it is important to note that plaintiffs' sole basis for believing infringement has occurred in the area of manufacture, use and sale of military equipment to foreign governments assumes that the protection of the patent-in-suit extends to a signal seeking receiver which automatically "restarts its tuning or sensing operation as a result of a 'termination of signal' or its equivalent." If plaintiffs are wrong in this assumption, discovery in this area is unnecessary. Given this fact, a decision to hold the motions in abeyance, may resolve the only remaining barrier to summary judgment in defendants' favor.

Discovery will be stayed with respect to these defendants pending resolution of the two issues stated above, except as to any defendant who makes a discovery proposal within two weeks. If such a proposal is made, the Court will permit discovery in some form to go forward. Thereafter, plaintiffs will have a final opportunity to file a brief and affidavits in opposition to the proposing defendants' motion for summary judgment.

## II.  DEFENDANTS' DISCOVERY

There is a limited amount of discovery presently pending response from plaintiffs. This also will be stayed.

## III.  HONEYWELL'S MOTIONS

Honeywell has moved to amend its answer to assert certain additional defenses, as well as a counterclaim. Plaintiffs have failed to suggest any way in which allowance of the amendment would prejudice its ability to litigate the merits of their claim against Honeywell or Honeywell's claim against them. Accordingly, and because leave to amend "shall be freely given when justice so requires," Rule 15(a) F.R.C.P., Honeywell's amendment is entirely appropriate. See, *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Honeywell has, in addition, filed a motion for summary judgment of non-infringement, as yet without supporting affidavits and brief. As soon as Honeywell has filed these latter materials, the Court shall enter an order regarding plaintiffs' response to Honeywell's motion.

## IV.  PLAINTIFFS' MOTION TO STRIKE ANSWER TO INTERROGATORIES

Plaintiffs have moved to strike answers to interrogatories filed by Bendix and Rockwell on the ground that they are improperly sponsored. C.A. 75–169, Doc. No. 113. This motion is without merit. Unless plaintiffs have some basis for believing that the attorneys supplying the answers have not, in fact, been retained by the corporate defendant involved, the answers to interrogatories are proper in form. [See 8 Wright & Miller, *Federal Practice & Procedure* § 2172 and authorities cited therein].

---

8. By reaching this conclusion, I make no final determination on whether this discovery must go forward in all of the eleven areas mentioned in plaintiffs' affidavit. I believe the Court needs to know about what discovery in these areas would entail.

9. Plaintiffs, for example, have suggested the taking of a deposition of an employee or employees of each defendant having personal knowledge in the area of sales of military equipment to foreign governments.

Plaintiffs have advanced no such basis in conjunction with their motion.

## V. THE RECORD IN CIVIL ACTION NO. 4780

Since our January 21st conference, I have reviewed the materials currently available in the file and have also been in telephone contact with Mr. Raymond Sexton, the Case Processing Assistant from the Southern District of New York. Based on the information presently available, I have concluded the following:

1. In all probability, all documents relating to Delaware Civil Action 4780 which were generated during the time the case was in the Southern District were filed in either 72 Civ. 2786, 74 Civ. 3292 or 74 Civ. 3297, those being the Southern District docket numbers for the actions against General Electric, Lafayette Radio Electronics, and ITT (Masco), respectively.

2. A copy of the document potentially of relevance filed in 74 Civ. 3292 (being defendants' answers to plaintiffs' interrogatories to each defendant served 4/4/75) has been supplied by Mr. Kellem. See C.A. 4780, Docket No. 56.

3. A copy of all relevant documents filed in 74 Civ. 3297 are presently in this Court's possession as a result of the re-transfer of the case pursuant to the MDL Panel's Order. See Docket No. 51, C.A. 4780.

4. Mr. Sexton has agreed to supply this Court with the documents filed in 72 Civ. 2786 which may, judging by the docket sheet notations, be relevant to C.A. 4780.

When the documents from 72 Civ. 2786 have arrived, the parties will be notified and given an opportunity to inspect them and to suggest any *additions* which should be made.[10] Rather than entertain a barrage of potentially inconsequential motions with regard to *deletions,* however, the Court will not rule on the pro-

priety of the use of any document until it is relied upon by someone. If these cases reach the trial stage, any party intending to rely on any document generated in the Southern District shall give reasonable notice to the opposing parties of that fact. Upon such notice, the opposing parties may present any objection they may have to the use of that document, and the Court will decide what use, if any, may be made of the contested document at trial.

ORDER ACCORDINGLY.

---

10. The Court hopes that such suggestions will be unnecessary since, to avoid piecemeal requests, it tried to err on the side of inclusion in asking for documents from the Southern District files.