Marilyn FLAX, Administratrix Ad Prosequendum of the Estate of Irving Flax, and Marilyn Flax, individually, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 91–2807.

United States District Court, D. New Jersey.

April 10, 1992.

Emil S. Cuccio, Cuccio & Cuccio, Hackensack, N.J., for plaintiff.

Susan C. Cassell, Asst. U.S. Atty., U.S. Attorney's Office, Newark, N.J., for defendant.

## OPINION

CHESLER, United States Magistrate Judge.

### I. INTRODUCTION

This matter comes before the Court on the motion of defendant United States of America for summary judgment and/or to dismiss the complaint. In accordance with the provisions of section 636(c) of Title 28 of the United States Code, the parties have consented to have this motion tried before the undersigned. By Order dated December 20, 1991, all proceedings with regard to this matter were referred to the undersigned for disposition. Oral argument was heard on March 23, 1992.

### II. BACKGROUND

In this action brought under the Federal Tort Claims Act, 28 *U.S.C.* §§ 1346(b), 2671 *et seq.*, plaintiff Marilyn Flax ("plaintiff") seeks damages incurred as a result of the death of plaintiff's husband on or about January 24, 1989 from defendant United States of America ("defendant").

## A. Facts

On the morning of January 23, 1989, at approximately 9:30 a.m., Irving Flax, the deceased husband of plaintiff (hereinafter referred to as "the decedent"), left his home with the intention of going to work. Affidavit of Marilyn Flax ("Flax Aff.") ¶ 2. Prior to entering his vehicle, the decedent was abducted by John Martini, Sr. ("Martini") and his accomplice, Theresa Afdahl ("Afdahl"). Complaint, First Count ¶ 1. Later that morning, at approximately 10:30 a.m., plaintiff received a telephone call from a man later identified as Martini. Flax Aff. ¶ 3. Martini informed plaintiff that he had kidnapped the decedent and demanded $100,000.00 for the decedent's release. *Id.*

Plaintiff then contacted the Fair Lawn Police Department. Flax Aff. ¶ 7. The Fair Lawn Police Department, in turn, contacted the Bergen County Prosecutor's Office and the Federal Bureau of Investigation ("FBI"). *Id.* ¶ 8.

Plaintiff received a second call from Martini at approximately 11:30 a.m. Flax Aff. ¶ 9. Martini inquired as to whether plaintiff had obtained the ransom money. *Id.* When plaintiff advised Martini that she could not obtain the $100,000.00 ransom, Martini asked if she could raise $25,000.00. *Id.* Martini told plaintiff that he would telephone again later that day. *Id.*

At approximately 2:30 p.m. that afternoon, FBI special agents arrived in Fair Lawn and assumed command of the kidnapping investigation and surveillance. Flax Aff. ¶ 10.

At approximately 5:00 p.m., Martini telephoned plaintiff a third time and asked plaintiff if she had secured the ransom money. *Id.* ¶ 14. Plaintiff advised Martini that she had raised the $25,000.00. *Id.* Martini then instructed plaintiff when and where to leave it. *Id.*

At approximately 7:30 p.m. that evening, plaintiff proceeded to the designated location to make the ransom payment. Flax Aff. ¶ 18. When plaintiff observed Martini, plaintiff deposited the ransom money and drove off. *Id.*

The decedent's body was discovered on the morning of January 24, 1989. Flax Aff. ¶ 19. The decedent had been shot to death. *Id.* On January 25, 1989, Martini and Afdahl were apprehended; they were charged with, and later convicted of, the kidnapping and murder of decedent. Complaint, First Count ¶ 22.

## B. Procedural History

On or about March 27, 1990, plaintiff, on behalf of herself individually and as administratrix of the decedent's estate, filed an Administrative Tort Claim against defendant through its agency, the FBI. Complaint Exhibit B. Plaintiff's claim sought damages under the Federal Tort Claims Act, 28 *U.S.C.* § 1346(b),[1] in the amount of $15,000,000.00. *Id.* On January 23, 1991, the United States Department of Justice denied the administrative claim. Complaint Exhibit C.

Thereafter, on June 26, 1991, plaintiff filed a complaint with this Court. Plaintiff's complaint alleges that the defendant, through its agents, conducted the surveillance of Martini and Afdahl in a negligent and wrongful manner. Specifically, the complaint alleges that the FBI agents responsible for the surveillance of Martini and Afdahl failed "to follow and/or implement valid, established FBI procedures and regulations" in the tailing and apprehension of the assailants. Complaint, First Count ¶ 18. The complaint charges that, as a result of defendant's negligence, the decedent suffered fatal injuries and the plaintiff has suffered, and will continue to suffer, substantial pecuniary loss and severe emotional distress. Complaint, First Count ¶¶ 24, 25.

---

1. The Federal Tort Claims Act gives federal courts jurisdiction to hear actions
 for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

 28 *U.S.C.* § 1346(b) (1988).

 Defendant filed its answer on September 23, 1991. Defendant then filed this motion for summary judgment and/or to dismiss the complaint.[2] In support of its motion for summary judgment, defendant claims that it is immune from suit by virtue of the discretionary function exception to the Federal Tort Claims Act, 28 *U.S.C.* § 2680(a). Defendant argues that the actions of the FBI, which have been challenged by plaintiff, involved elements of judgment and choice and were based upon considerations of public policy. Therefore, defendant maintains that the agents' actions fall within the discretionary function exception. Declaration of John Walker ("Walker Decl.") ¶¶ 4–7. Defendant contends that because such actions cannot form the basis of a suit under the Federal Tort Claims Act, there exists no genuine issue as to any material fact and it is entitled to judgment as a matter of law.[3]

In response to defendant's motion, plaintiff contends that summary judgment is inappropriate because genuine issues of material fact, which concern the surveillance operations of the FBI, exist.[4]

## III. DISCUSSION

### A. The Standard to Be Applied for a Motion for Summary Judgment

The court may grant summary judgment only if the pleadings, supporting papers, affidavits, and admissions on file, when viewed with all inferences in favor of the nonmoving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c); *see Todaro v. Bowman*, 872 F.2d 43, 46 (3d Cir. 1989); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.), *cert. dism'd,*

---

2. Federal Rule of Civil Procedure 12(b) provides that a motion to dismiss for failure to state a claim upon which relief can be granted is to be converted into a motion for summary judgment whenever matters outside the pleading are presented to and accepted by the Court. *See Fed.R.Civ.P.* 12(b); C. Wright and A. Miller, Federal Practice and Procedure: Civil 2d § 1366 (1990). Because this Court has received affidavits and certifications from both plaintiff and defendant, the motion before the Court shall be treated as a motion for summary judgment.

3. Defendant also raises the argument that its motion should be granted because plaintiff has failed to state a cause of action under the laws of the State of New Jersey. The Court addressed this assertion at oral argument on March 23, 1992, and, for the reasons articulated on the record that same date, the Court rejected defendant's contention.

4. Plaintiff has submitted an affidavit pursuant to Federal Rule of Civil Procedure 56(f). *See* Affidavit of Emil S. Cuccio ("Cuccio Aff."). The Affidavit explains that, without an examination of the documents requested by plaintiff and an exploration of the formal testimony of witnesses, plaintiff cannot learn the details of the FBI surveillance. Cuccio Aff. ¶ 4. The Affidavit asserts that without this discovery, plaintiff cannot present additional facts that are essential to justify its opposition to defendant's summary judgment motion, and, therefore, summary judgment is inappropriate. Cuccio Aff. ¶ 4.

Federal Rule of Procedure 56(f) provides that, "if it appears from the affidavits of a party opposing the motion [for summary judgment] that he cannot for reasons stated present by affidavit facts essential to justify his opposition," the court may grant a continuance to permit further discovery. *Fed.R.Civ.P.* 56(f). Although continuance of a motion for summary judgment for purposes of discovery has been liberally granted, *see e.g., Mid–South Grizzlies v. National Football League,* 720 F.2d 772, 779 (3d Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2657, 81 L.Ed.2d 364 (1984), the court, in the exercise of its discretion, may deny an application for further discovery made under Rule 56(f). *See Catanzaro v. Masco Corp.,* 408 F.Supp. 862, 867 (D.Del.1976). For example, the court does not abuse its discretion in ruling on a motion for summary judgment without allowing the opponents a chance for further discovery where the opponents do not present any evidence of what further discovery could produce, *see Hancock Industries v. Schaeffer,* 811 F.2d 225, 230 (3d Cir.1987); *Bettin v. Nelson,* 744 F.2d 53, 58 (8th Cir.1984), or where it does not appear that further discovery would be useful in the disposition of the matter. *See Traill v. Felder,* 330 F.Supp. 560, 563 (D.Alaska 1971).

Here, the affidavit submitted pursuant to Rule 56(f) does not set forth what material facts plaintiff hopes to uncover by means of extended discovery to support its allegations. Moreover, there is no indication that the additional discovery which plaintiff seeks could demonstrate the inapplicability of the discretionary function exception to the government actions in question. Therefore, the Court shall deny plaintiff's application for a continuance of discovery made pursuant to Rule 56(f) and shall rule on defendant's motion for summary judgment without further discovery.

483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987).

At the summary judgment stage, the judge's function is not to weigh the evidence and discern the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue. *Id.* at 248, 106 S.Ct. at 2510. A fact is material if it influences the outcome of the action under the governing substantive law. *Id.*

■ Thus, the moving party essentially bears two burdens. First, the moving party bears the burden of production, of making a prima facie showing that it is entitled to summary judgment. Once such a showing is made, this burden shifts to the nonmoving party, who must prove that the moving party is not entitled to summary judgment. Second, the moving party bears the burden of persuasion. This burden is a stringent one which always remains with the moving party. If there remains any doubt as to whether a trial is necessary, summary judgment should not be granted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330–33, 106 S.Ct. 2548, 2556–58, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–61, 90 S.Ct. 1598, 1608–10, 26 L.Ed.2d 142 (1970); *see generally* C.

Wright, A. Miller, & M. Kane, Federal Practice and Procedure: Civil 2d § 2727 (1983).

### B. The Federal Tort Claims Act and the Discretionary Function Exception

The Federal Tort Claims Act provides that, generally, the United States is liable in the same manner and to the same extent as a private individual under similar circumstances. 28 *U.S.C.* § 2674 (1988). The United States Government, however, remains immune from liability for "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 *U.S.C.* § 2680(a).

■ Section 2680(a), referred to as the discretionary function exception, has been held to encompass only acts that involve an element of judgment or choice. *See United States v. Gaubert*, —— U.S. ——, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988); *Dalehite v. United States*, 346 U.S. 15, 34, 73 S.Ct. 956, 967, 97 L.Ed. 1427 (1953).[5] The purpose of the discretionary function exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the me-

---

**5.** The courts' analysis of the discretionary function exception has evolved substantially since the Supreme Court first discussed the exception in *Dalehite*. Decisions following *Dalehite*, in an attempt to shape the limited legislative history and the language of *Dalehite* into a clear standard by which to determine whether a government agent's actions fall within the exception, distinguished between activities conducted on the planning level and activities conducted on the operational level. *See e.g., Mahler v. United States*, 306 F.2d 713 (3d Cir.), *cert. denied*, 371 U.S. 923, 83 S.Ct. 290, 9 L.Ed.2d 231 (1962). These decisions regarded discretionary acts of government agents at the planning level as within the exception and discretionary acts at the operational level as outside the exception. *See Downs v. United States*, 522 F.2d 990, 997 (6th Cir.1975).

In *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), the

Supreme Court strayed from this distinction and held that "[i]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *Id.* at 813, 104 S.Ct. at 2764. It was not until recently, however, that the Supreme Court explicitly rejected the differentiation between planning-level activities and operational-level activities. *See Gaubert*, —— U.S. at ——, 111 S.Ct. at 1275. The Court in *Gaubert* expressly repudiated the assertion that the discretionary function exception protects only those acts of negligence which occur in the course of establishing policy rather than acts of negligence which occur in the course of day-to-day activities. *Id.* Instead, the Court looked to whether the challenged actions involved the exercise of discretion in furtherance of public policy goals. —— U.S. at ——, 111 S.Ct. at 1278. It is this interpretation of the discretionary function exception by which the Court is governed.

dium of an action in tort." *Varig Airlines,* 467 U.S. at 814, 104 S.Ct. at 2765; *see Berkovitz,* 486 U.S. at 537, 108 S.Ct. at 1959 (stating that the exception protects only governmental actions and decisions based on considerations of public policy). Therefore, even where the challenged governmental acts involve an element of judgment, it must be determined whether that judgment is of the kind which the discretionary function exception was designed to shield. *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958.

■ Where Congress has delegated authority to an independent agency to implement the general provisions of a regulatory statute, decisions made on the planning level that establish programs, as well as the promulgation of regulations by which the agency is to carry out the programs, fall within the discretionary function exception. *Gaubert,* — U.S. at —, 111 S.Ct. at 1274. Moreover, the discretionary function exception protects the actions of government agents that involve judgment or choice and are grounded in the social, economic, or political goals of the statute. *Id.* at —, 111 S.Ct. at 1274; *see Varig Airlines,* 467 U.S. at 815–20, 104 S.Ct. at 2765–67 (where the actions of the Federal Aviation Administration in formulating and implementing a plan for airline inspections, even if negligently conducted, were protected by the discretionary function exception because of the agency's authority to establish safety standards for airplanes).

■ Thus, if a regulation prescribes particular conduct and the Government employee obeys its direction, the Government's actions will fall within the discretionary function exception. *Gaubert,* — U.S. at —, 111 S.Ct. at 1274. This is so because the actions will be deemed to be in furtherance of the policies that inspired the promulgation of the regulation. *Id.* at —, 111 S.Ct. at 1274. If the Government employee violates the mandatory regulation, the Government's actions will fall outside of the discretionary function exception because there was no room for judgment or choice and the actions will be deemed contrary to policy. *Id.* at —, 111 S.Ct. at 1274; *see Berkovitz,* 486 U.S. at 531, 108 S.Ct. at 1954 (where the actions of the agency employees were not protected by the exception because the employees failed to follow specific directions contained in the applicable regulations).

■ If, however, a regulation allows the Government employee to exercise discretion, "the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Gaubert,* — U.S. at —, 111 S.Ct. at 1274.

■ In ruling on defendant's motion for summary judgment, the Court must determine whether the FBI actions challenged by plaintiff were discretionary in nature and whether they were conducted in furtherance of FBI policies.

Defendant asserts that FBI regulations provide FBI agents with the discretion to determine how best to conduct an investigation to fulfill the policies of the FBI while taking into account the balance between those policies and the safety of the victim. *See* Walker Decl. ¶¶ 4–7. Defendant maintains that the FBI agents who were assigned to execute the surveillance operation made discretionary decisions grounded in the policies of the FBI.

Plaintiff, however, contends that the FBI agents charged with following Martini were not specifically empowered to make policy judgments. Plaintiff asserts that maintaining proper surveillance involved no discretion; rather, the agents' activities were operational and concerned only the execution of a tail on Martini. Plaintiff, therefore, maintains that the discretionary function exception is inapplicable.

In support of its argument that the agents' actions involved no discretion, plaintiff cites *Downs v. United States,* 522 F.2d 990 (6th Cir.1975). In *Downs,* the survivors of two victims of an airline hijacking sued the United States under the Federal Tort Claims Act to recover damages. The plaintiffs alleged that the FBI

agent had been negligent in handling the situation and, thereby, had caused the victims' deaths. In its defense, the Government asserted that the discretionary function exception to the Act protected the agent's actions and barred plaintiffs' suit. In determining that the agent's actions were not discretionary in nature, the court considered that the agent was not involved in formulating governmental policy but, rather, was engaged in directing the actions of other government agents in the handling of a particular situation. *Downs,* 522 F.2d at 997. The *Downs* court, however, was guided by the pre-*Gaubert* distinction between activities that entail the formulation of governmental policy and activities conducted on an operational level. Therefore, the decision in *Downs* is not controlling authority.

Under the more recent Supreme Court decision in *Gaubert,* plaintiff's argument that the actions of the FBI surveillance team are not protected by the discretionary function exception because the agents were not engaged in forming FBI policy but, rather, were engaged in the handling of the surveillance of the kidnappers must fail. *Gaubert,* —— U.S. at ——, 111 S.Ct. at 1275, 1278.

The established policy of the FBI, as expressed by the FBI regulations and guidelines, allows its agents to exercise discretion in conducting investigations. Walker Decl. ¶¶ 3, 4. The focus of this Court's inquiry is not on the agents' subjective intent in exercising the discretion conferred by the FBI regulations, but on the "nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert,* —— U.S. at ——, 111 S.Ct. at 1275.

The Court recognizes that there exist discretionary acts performed by government agents that, while they may be within the scope of their employment, are not within the discretionary function exception because they are not based on established policy. *See Gaubert,* —— U.S. at ——, 111 S.Ct. at 1275 n. 7. In *Gaubert,* the Supreme Court noted that if a government

agent drives an automobile on a mission connected with his official duties and negligently collides with another car, the discretionary function exception would not apply. The Court acknowledged that, although driving requires a continuous exercise of discretion, the agent's decisions in exercising that discretion are not grounded in regulatory policy. *Id.* at ——, 111 S.Ct. at 1275 n. 7; *see Dalehite,* 346 U.S. at 29–30, 73 S.Ct. at 964–965.

The conduct described in *Gaubert,* however, is distinguishable from the FBI actions challenged by plaintiff in this case. The discretion exercised by the agents during the surveillance of Martini and his accomplice involved more than the ordinary judgment entailed driving an automobile.

The decisions made by the FBI agents while attempting to conduct the surveillance of Martini and Afdahl undoubtedly involved the weighing of specific public policy considerations. Following the target of the surveillance, or, as it is colloquially referred to, executing a "tail," necessarily requires the making of numerous tactical determinations throughout the operation. The agents must continually adjust the distance maintained between the surveillance team and the target of the surveillance. The agents first must consider the availability of agency resources such as cars, agents, and aircraft and then must achieve a balance between conducting too close a tail, and thereby risking discovery, and allowing too much distance between the surveillance team and the target, thereby jeopardizing the successful apprehension of the target. On the one hand, conduct which increases the risk of discovery necessarily increases the likelihood of injury to the victim, for the discovery of police surveillance is likely to antagonize the wrongdoer.[6] On the other hand, conduct which increases the risk of losing the subject creates a risk that the victim will be harmed before the authorities are able to intervene. These considerations must be weighed and evaluated under severe time constraints and in the context of constantly changing and unpredictable traffic conditions.

**6.** See *Downs,* 522 F.2d 990, for an example of a factual situation that produced such a result.

**1042**

The decisions made by the FBI agents while conducting the surveillance of Martini and Afdahl involved discretionary determinations made in pursuit of the FBI objective to apprehend kidnappers with a minimal risk of danger to the victim. Therefore, the Court finds that the actions of the FBI agents fall within the discretionary function exception. *See also Pooler v. United States,* 787 F.2d 868, 871 (3d Cir.), *cert. denied,* 479 U.S. 849, 107 S.Ct. 175, 93 L.Ed.2d 111 (1986) (holding that because the government agent charged with the responsibility of conducting an investigation had to exercise discretion as to the policy decision to use an informant and as to the extent of control which should be maintained over the selected informant, his actions were protected by the discretionary function exception).

### IV. CONCLUSION

In deciding whether actions of a government agent fall within the discretionary function exception to the Federal Tort Claims Act, the Court must determine whether the challenged actions involve the exercise of discretion and whether the actions are conducted in furtherance of government policy. Where there exists an agency regulation that allows the government agent to exercise discretion, it is presumed that the agent's actions inhere in policy when he exercises that discretion.

The agents assigned to the surveillance of Martini and Afdahl specifically were empowered to make policy judgments regarding the safety of the victim and the public, the deterrence of crime, and the efficient allocation of agency resources. In carrying out the surveillance operation, the agents necessarily took certain took certain calculated risks, but those risks were encountered to advance the policies of the FBI and pursuant to the specific grant of authority expressed in the FBI regulations. *See Varig Airlines,* 467 U.S. at 820, 104 S.Ct. at 2767; *Pooler,* 787 F.2d at 871. Thus, the Court is satisfied that the actions in question involved the kind of policy judgment that the discretionary function was designed to protect.

Under these circumstances, the Court finds that the FBI agents' alleged negligence in failing to properly conduct the surveillance of Martini and Afdahl falls within the discretionary function exception to the Federal Tort Claims Act. Thus, plaintiff's contentions regarding the surveillance operations of the FBI present no issue of material fact, and defendant is entitled to judgment as a matter of law. An appropriate Order shall issue.