George Rahsaan BROOKS

v.

Lt. ANDOLINA, Wilson Spencer, Paul Burgard, Capt. Tohey, Lawrence Weyandt, James Wigton, Russell Treece, George Petsock, Glen Jeffres, and Richard Thornburgh.

Appeal of Lt. ANDOLINA, Wilson Spencer, Paul Burgard, Capt. Tohey, Lawrence Weyandt, James Wigton, Russell Treece, George Petsock and Glen Jeffres.

George Rahsaan BROOKS, Appellant,

v.

Lt. ANDOLINA, Wilson Spencer, Paul Burgard, Capt. Tohey, Lawrence Weyandt, James Wigton, Russell Treece, George Petsock, Glen Jeffres, and Richard Thornburgh.

Nos. 86–3621, 86–3652.

United States Court of Appeals, Third Circuit.

Argued July 20, 1987.

Decided Aug. 17, 1987.

LeRoy Zimmerman, Atty. Gen., Jean O. Davin (argued), Deputy Atty. Gen., Donald P. Minahan, Chief Deputy Atty. Gen., Western Regional Office, Gregory R. Neuhauser, Sr. Deputy Atty. Gen., Andrew S. Gordon, Chief Deputy Atty. Gen., Litigation Section Office of Atty. Gen., Pittsburgh, Pa., for appellants.

Michael Stephen Antol, Neighborhood Legal Services Ass'n, Pittsburgh, Pa., James D. Crawford (argued), Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellees.

Before SEITZ, STAPLETON, Circuit Judges, and BRODERICK, District Judge.[*]

---

## OPINION OF THE COURT

SEITZ, Circuit Judge.

The defendants, Pennsylvania prison officials, appeal the order of the district court entering judgment in favor of plaintiff George Rahsaan Brooks, an inmate at the State Correctional Institute at Pittsburgh, S.C.I.P. Brooks appeals the award of damages. This court has jurisdiction under 28 U.S.C. § 1291 (1982).

### I.

On August 1, 1983, Brooks wrote a letter to Ms. Connie Craig, Coordinator of the Prisoners Branch of the NAACP, complaining that a female prison guard had searched one of his visitors in a very seductive manner. In the letter Brooks asserted that the guards should not be permitted to search visitors without probable cause.

Defendant Andolina filed a misconduct report against Brooks charging him with insolence or disrespect towards a staff member. The report stated that the basis of the charge was the letter to Craig, and that Brooks's claim of an improper search was both false and defamatory.

Prison officials held a hearing on Andolina's charge on August 19, 1983. At the hearing, the female guard testified that the allegations in Brooks's letter were totally false. In addition, she testified that she had received training on search procedures. Brooks was not permitted to present any witnesses on the ground that he failed to comply with the new witness request procedure adopted shortly before charges were filed against him. The hearing committee found that Brooks's statements were false and defamatory, and that he was guilty as charged. The hearing committee sentenced him to thirty days punitive segregation.

After unsuccessfully pursuing an appeal through the prison system, Brooks filed this action under 42 U.S.C. § 1983 (1982) in the district court, alleging that the prison officials had violated his federal constitu-

[*] The Honorable Raymond J. Broderick of the U.S. Dist. Ct. for the E.D. Pennsylvania sitting by designation.

tional rights. The district court referred the action to a magistrate.

After holding an evidentiary hearing, the magistrate concluded that the disciplinary action violated Brooks's first amendment rights. The magistrate rejected the defendants' attempt to justify the action as a security measure, noting that there was no mention of security concerns in the charge or at the prison hearing. The magistrate thus found that the only reason for disciplining Brooks was because he had written the letter. In addition, the magistrate recommended that the district court find that Brooks was deprived of his procedural due process rights as a result of prison officials' refusal to allow him to present witnesses. Finally, the magistrate recommended that Brooks receive only nominal damages because he did not present any proof of actual damages. The district court adopted the findings and recommendations of the magistrate in full.[1]

## II.

■ In *Procunier v. Martinez*, 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 139 (1974), the Supreme Court established that

Prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements. Rather, they must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation.

Consistent with this holding, the Fifth Circuit has held that prison officials may not punish inmates for statements made in letters to outsiders, even if the same statements would be grounds for punishment if made orally to prison guards. *See McNamara v. Moody*, 606 F.2d 621, 624 (5th Cir.1979).

The prison officials contend, however, that they are entitled to qualified immuni-

ty. Government officials performing discretionary functions are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The prison officials argue that the disciplinary action did not violate clearly established constitutional rights because there were security concerns involved and because the officials did not interfere with the transmission of the letter.

The Commonwealth's argument ignores the fact Brooks was charged only with making statements in the letter to Ms. Craig. At no time during the disciplinary proceedings did the prison officials allege that Brooks's letter presented a threat to prison security. We, therefore, agree with the magistrate that the security concerns raised by defendants are merely a belated attempt to justify their actions.

The prison officials rely on *Turner v. Safley*, —— U.S. ——, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), for support that the disciplinary proceedings against Brooks were justified. In *Turner*, however, the Supreme Court simply held that because of justifiable security concerns, prison authorities may prohibit inmates from mailing letters to inmates in other prisons within the state prison system. In this case, Brooks was not disciplined for communicating with other inmates, but for the contents of his letter to a person outside the prison system. The *Turner* opinion, therefore, provides no support for the prison authorities' position.

In addition, it is immaterial that the officials did not interfere directly with the mailing of the letter. If prison officials cannot censor unflattering statements made in letters to outsiders, they also may not punish an inmate for the contents of such letters. We therefore conclude that the disciplinary action taken against

---

1. The magistrate also found that Brooks failed to prove his claim against Governor Thornburgh because he did not show that the governor had actual notice of the actions by the prison officials. Thus, the magistrate recommended that the claim against Thornburgh be dismissed. This recommendation is not an issue in this appeal.

Brooks violated his clearly established constitutional rights.

■ The prison officials also assert that the district court erred in concluding that the refusal to permit Brooks to call any witnesses violated his procedural due process rights. The officials argue that there was no clear violation of Brooks's rights because at the time of the hearing, it was not clearly established third circuit law that the refusal to permit an inmate to call witnesses violated his or her due process rights.

The regulations adopted by the prison officials, however, stated that "The inmate shall be permitted to call witnesses at the hearing." Moreover, under *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974), "the inmate facing disciplinary proceedings should be allowed to call witnesses ... in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Because the officials failed to show that permitting Brooks to call his witnesses would have created any hazards, we conclude that the refusal to allow witnesses violated Brooks's procedural due process rights.

This conclusion does not mean that prison administrators may not insist on compliance with reasonable procedural rules requiring prehearing identification of witnesses. The procedural rule relied on by the defendants, however, does not aid their cause because the district court found that the rule was a new one to which Brooks had no access and with which he had no opportunity to comply. Accordingly, to the extent that the refusal to permit Brooks to call witnesses was based on his failure to comply with the procedural requirements of the new rule, it was clearly an arbitrary and capricious refusal.

Finally, the prison officials argue that the district court erred in not considering the evidence that Brooks was circulating the letter to other inmates. This argument is wholly without merit. First, the magistrate's report refers to this evidence on several occasions. Second, as noted above, Brooks was not charged with circulating the letter; he was charged with insubordination and disrespect based on the statements made in the letter to Craig.

We therefore conclude that the district court was correct in holding that the actions of the prison officials violated Brooks's first and fourteenth amendment rights.

## III.

■ Brooks argues in his cross-appeal that the district court erred in adopting the magistrate's recommendation limiting his damages to nominal damages. The magistrate found that Brooks did not present evidence that he suffered actual injury as a result of the violation of his constitutional rights. She therefore concluded that *Memphis Community School District v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986), mandated that Brooks be awarded only nominal damages.

In *Memphis Community School District*, the Supreme Court held that a section 1983 plaintiff may not recover compensatory damages based on the abstract value of the constitutional right that was violated. Rather, compensatory damages must be grounded in the actual injury suffered by the plaintiff as a result of the defendant's actions.

At the same time, the Supreme Court recognized that compensatory damages may be awarded once the plaintiff shows actual injury despite the fact the monetary value of the injury is difficult to ascertain. *See, e.g., City of Watseka v. Illinois Public Action Council*, 796 F.2d 1547, 1559 (7th Cir.1986). As the Court stated, "compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation ..., personal humiliation, and mental anguish and suffering.'" 106 S.Ct. at 2543, quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974).

Our review of the record convinces us that Brooks demonstrated that he suffered actual injury as a result of his placement in punitive segregation for thirty days in vio-

lation of his constitutional rights. At the hearing before the magistrate, Brooks testified that while in punitive segregation he lost his regular visiting and phone call privileges, his rights to recreation and to use the law library, and his wages from his job. In light of this testimony, the magistrate erred in concluding that Brooks did not introduce evidence of actual injury. *See H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1088 (11th Cir.1986) (holding that "real injury can be inferred from the facts") (citation omitted).

■ Because Brooks satisfied the standard enunciated in *Memphis Community School District* for recovery of compensatory damages, we conclude that the district court erred in awarding Brooks only nominal damages for the unwarranted punitive segregation. We decline to adopt a specific formula for calculating the damages to which Brooks is reasonably entitled.[2] But we note that not all elements of damages under the principles of the common law of torts need be proved by specific dollar amounts, e.g., pain and suffering.

We therefore will remand this case to the district court for a determination of the reasonable amount of damages to compensate Brooks for the actual injuries he suffered as a result of his unconstitutional placement in punitive segregation for thirty days.

## IV.

Accordingly, the judgment of the district court will be affirmed insofar as it imposed liability on the prison authorities. The judgment will be vacated to the extent that it awarded Brooks nominal damages and that matter will be remanded to the district court for further proceedings consistent with this opinion.

---

2. Although Brooks testified that he lost his wages as a result of the unwarranted transfer to punitive segregation, he failed to offer any evidence as to what those lost wages were. Moreover, Brooks was represented by counsel at the hearing before the magistrate. Because the plaintiff bears the burden of providing the trier of fact with some evidentiary basis for the calculation of lost wages, *see, e.g., Huddell v. Levin*, 537 F.2d 726, 744–45 (3d Cir.1976), we conclude that the record is insufficient to support an award for lost compensation and affirm the district court's refusal to award damages for lost wages.