**Dante TODARO, Appellant,**

v.

**John M. BOWMAN, Warden John A. Watkins, Sheriff.**

No. 88–3576.

United States Court of Appeals, Third Circuit.

Submitted Dec. 30, 1988.

Decided April 10, 1989.

Andrew G. Kimball, Richard D. Klaber, Dickie, McCamey and Chilcote, P.C., Pittsburgh, Pa., for appellees.

Before MANSMANN, HUTCHINSON, and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

Dante Todaro, a state prisoner, seeks damages and equitable relief under 42 U.S.C. § 1983 (1982) claiming deprivation of his fourteenth amendment guarantee of procedural due process. In his pro se complaint, Todaro alleged that the warden of the county jail and another individual, without benefit of a hearing, imposed a three-day punitive segregation upon him in retaliation for having written critical letters concerning prison conditions.[1]

The district court granted summary judgment in favor of the defendants, concluding that, under *Marshall v. Kozakiewicz*, 601 F.Supp. 1549 (W.D.Pa.1985), Todaro did not have a legally cognizable § 1983 claim. Because we find the record factually deficient for summary judgment purposes and because legal issues were not satisfactorily addressed, we will vacate the judgment of the district court and remand for further proceedings.

### I.

On March 6, 1986, Todaro, then incarcerated at the Somerset County Jail, was transferred to the Bedford County Jail to attend legal proceedings within that jurisdiction. Todaro returned to the Somerset County Jail on March 12, 1986 where he was placed in a cell in the basement of the facility, alternatively referred to as lockup, medical quarantine, drunk tank, and holding cell. There he remained until March 15, 1986. According to Todaro's complaint, he was released from the holding cell only after the prison authorities were contacted

Dante Todaro, Huntingdon, Pa., pro se appellant.

---

1. Although in his complaint Todaro pleaded facts which also support an action based upon deprivation of the right of free expression, he did not so claim specifically until he filed opposing objections to the United States Magistrate's initial report. As a pro se litigant Todaro is held to less stringent pleading standards and we will afford him a liberal interpretation of our procedural rules. We will, therefore, consider the first amendment claim as properly before us.

by telephone by the American Civil Liberties Union in response to Todaro's complaint concerning the conditions of his incarceration. Todaro claimed that after his release from the holding cell, he was confined to the high security division of the prison for approximately one year.[2]

Todaro averred that his confinement in the holding cell was punishment for a number of letters he penned to the American Civil Liberties Union, the County Commissioners and a United States Congressman, criticizing prison conditions. According to Todaro this period of confinement in the holding cell was tantamount to punitive segregation as he was denied exercise, recreation, and other privileges afforded prisoners in the general population.

The named defendants in this action were John Bowman, the jail warden, and John Watkins, whose official status, even at this stage, remains unclear. Since, however, we are reviewing the facts on a summary judgment basis in a light favorable to the non-moving party, we will assume, at least at this juncture, that Watkins was serving as an acting sheriff at the time of the alleged incident.

Bowman and Watkins filed a motion to dismiss Todaro's complaint for failure to state a cause of action upon which relief could be granted. Although admitting that Todaro did not receive a hearing prior to being placed in the holding cell, the defendants requested dismissal, first, on the basis that John Watkins did not become the Somerset County Sheriff until a month after the alleged incident. Bowman and Watkins also argued that there is no protected liberty interest in remaining in the general inmate population in a Pennsylvania county jail and, thus, no legal basis for Todaro's claim.

In reaching his decision, the United States Magistrate to whom the matter was

assigned considered an affidavit regarding Watkins' status at the time of the incident, thereby treating the motion as one requesting summary judgment. Finding a factual dispute concerning Watkins' official capacity within the jail and the extent of his involvement with Todaro on the operable dates, the magistrate denied summary judgment.

As to the legal viability of Todaro's claim, the magistrate rejected the defendants' argument that Todaro did not possess a state-created liberty interest. The magistrate decided that a factual issue existed as to whether Todaro's removal from the general population was a result of an administrative classification or as punishment in retaliation for the letters Todaro wrote complaining about prison conditions.[3] The defendants filed an objection to the magistrate's report solely on the question of Watkins' official capacity. Todaro filed opposing objections to the magistrate's report, elaborating upon his first amendment claim. The district court adopted the report and recommendation of the magistrate and discovery proceeded.

At his deposition Todaro acknowledged that it was prison custom to medically quarantine incoming prisoners for a 24–hour period. He then stated that after the 24–hour period he made inquiry as to the continuation of his stay in the holding cell. He testified that both Bowman and Watkins told him that he had "caused too many waves" with the letters he wrote. As to the restrictions imposed upon him, although Todaro claimed that in the three days he never left the holding cell, he later conceded that he was released for a 15–minute visit with his mother. Todaro was also presented with evidence indicating that when recreation was available to him he refused to participate. Todaro denied

---

2. Although, at times, Todaro attempts to state a cause of action for this post-March 15, 1986 one-year period in the security section of the prison, his complaint is strictly limited to the March 12 through March 15 confinement. Even affording liberal latitude to pro se litigants, we must limit our discussion and decision to those same three days.

3. We note here that Todaro was not directly removed from the general population of the Somerset County Jail to the holding cell; rather, he was placed there upon his return from the Bedford County Prison.

he was ever offered the opportunity for recreation.[4]

After the close of discovery, Bowman and Watkins once again moved for summary judgment, averring this time that Todaro was never in punitive segregation, therefore, he was not entitled to a due process hearing concerning his three day stay in the holding cell. Watkins' questionable official status was not raised at this time.

Without awaiting response from Todaro, the magistrate granted Watkins' and Bowman's summary judgment motion.[5] The magistrate found that Todaro's allegations of punitive retribution were unsupportable and found instead that, upon return from the Bedford County Prison, he was medically quarantined in conformity with jail policy. The magistrate then concluded that Todaro's claim of constitutional deprivation was resolved by *Marshall v. Kozakiewicz*, 601 F.Supp. 1549 (W.D.Pa.1985).

In *Marshall*, Pennsylvania regulations applicable to classification of county jail prisoners, 37 Pa.Code § 95.255, were viewed as merely setting forth factors to be considered in a classification process. Since these factors lacked the requisite mandatory character which the Supreme Court found necessary in *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), to create a protected liberty interest, Todaro could not invoke a due process argument concerning Watkins' and Bowman's failure to provide him with a hearing. Accordingly, the magistrate recommended that Todaro did not have a valid § 1983 claim. Except in the context that the confinement was not retaliatory, the magistrate did not address Todaro's possible first amendment claim.

After the magistrate's decision, but still within the timetable set by the magistrate, Todaro filed a cross motion for summary

judgment, attaching a copy of the Somerset County Prison regulations outlining both prison classification procedures and steps to be followed in the event of a disciplinary action. In an accompanying affidavit, Todaro stated that although it would have been customary for him to have been placed in medical quarantine upon his return from the Bedford County Prison, his confinement beyond the 24–hour period assumed a punitive posture. Todaro once again alleged that his continued stay in the holding cell was in retaliation for the complaint letters he authored. Todaro also filed objections to the magistrate's report and recommendation.

The district court reviewed the matter *de novo* and adopted the report and recommendation of the magistrate.

Todaro appealed and we have jurisdiction pursuant to 28 U.S.C. § 1291.

In reviewing a motion for summary judgment, any inferences to be drawn from the evidence before the district court must be viewed in the light most favorable to the party opposing the motion, in this case, Todaro. Todaro's allegations supported by affidavit must be taken as true, and when these conflict with those of Bowman and Watkins, Todaro must receive the benefit of the doubt. *Joseph v. Hess Oil*, 867 F.2d 179, 182 (3d Cir.1989). Watkins and Bowman may only prevail if they show "that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); Fed.R. Civ.P. 56(c). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Id.* at 248, 106 S.Ct. at 2510.

We apply these standards in deciding whether there is a genuine issue as to

---

**4.** The document in the record purporting to show that Todaro refused recreation was incomplete. Although the defendants claimed that the reverse side of a shift report of March 14, 1986 contained the notation "Todaro refused recreation", the copy of the report in the record reveals no such reference.

**5.** Although under *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), a district court can enter summary judgment sua sponte, a preliminary requirement is that the losing party be put on notice to bring forth evidence. *Bass v. Attardi*, 868 F.2d 45, 49 (3d Cir.1989). We will assume that the district court's *de novo* review cured this procedural problem.

whether Todaro's three-day confinement was, as the defendants claim, pursuant to a classification procedure or a permissible deviation therefrom, or, as Todaro asserts, a form of retaliatory punitive segregation.

We conclude that summary judgment was improvidently granted in this matter. We decide this on two grounds: (1) there remain outstanding questions of material fact; and, (2) given those unresolved facts, this action is not necessarily foreclosed by *Marshall v. Kozakiewicz* and must be viewed in a different legal context. If the only evidence offered supported the conclusion that Todaro's three-day confinement in the holding cell was part of the established classification procedure of the prison, we would agree that Todaro had no protected liberty interest triggering imposition of due process requirements. However, since disputed facts indicate that Todaro's elongated stay in the holding cell may have been disciplinary in nature, reexamination of the character of county prison regulations and the legal rights they confer is required.

## II.

### Prison Regulations

We turn our attention directly to the sufficiency of Todaro's allegation that he was denied due process by reason that he did not receive either a hearing or a reason to justify his segregation.

The defendants assert that Todaro was not in punitive segregation, but was placed in lockup in conformity with its policy of a 24–hour medical quarantine imposed when an inmate enters the prison.

We have no difficulty in finding that upon his return to the Somerset County Jail Todaro was properly placed into medical quarantine. Section 2000 of the Somerset County Prison Handbook [6] outlines the admission and orientation procedures of the prison. The relevant provisions read as follows:

**2002 Medical Quarantine**

Upon leaving the reception area, you are placed in a cell, usually with other new commitments, until seen by the doctor at 8:00 A.M. on the next working weekday. It is at this point that you will be issued soap, towels, linens and a toothbrush.

**2003 Cell Assignments**

After the completion of your medical examination, you will be interviewed by a member of the Treatment Staff, issued prison clothing and assigned to one of the various levels of security within the institution.

According to the regulations, Todaro should have been seen by a doctor at 8:00 a.m. on March 13.[7] Either way, after 24 hours, absent a medical reason, Todaro should have been classified and assigned to one of the various levels of security within the prison. Instead, it appears that a departure from the ordinary prison procedures occurred at this point.

■ Although the magistrate opined that Todaro failed to demonstrate that his confinement was not strictly administrative, the record simply does not support this finding. There is disagreement as to the range of privileges afforded Todaro while in the holding cell, but it is undisputed that he was denied the full panoply of privileges afforded inmates in the general population.[8] We find nothing to contradict Todaro's assertions that after the initial 24–hour quarantine, his continued confinement in the holding cell assumed a different character. Moreover, he asserts it was intended to discipline him for publishing his complaints about the prison conditions.

---

**6.** As in *Stephany v. Wagner*, 835 F.2d 497, 500 n. 3 (3d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 2851, 101 L.Ed.2d 888 (1988), whether the prison rule book can establish a liberty interest has not been challenged. Without resolving this question, we will accept that the handbook assumes this legal capacity.

**7.** March 13, 1986 was a Thursday, assumedly a working weekday.

**8.** It is immaterial whether Todaro was in fact allowed to have visitors or offered recreation since, according to the prison rules, these are privileges to which even those inmates confined to disciplinary segregation are entitled. *Somerset County Prison Resident Guidebook* § 5003(1)(b).

Why he actually remained in lockup for the additional two days is an unresolved question of material fact. The fact is material because if this confinement was in fact punishment, Todaro may indeed have a legitimate § 1983 claim.

In *Stephany v. Wagner,* 835 F.2d 497 (3d Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 2851, 101 L.Ed.2d 888 (1988), we decided that the main issue in determining whether a state rule can create a protected liberty interest is whether it "places substantive limitations on official discretion." *Id.* at 500, quoting *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). We then acknowledged, citing *Marshall v. Kozakiewicz,* and *Tyler v. Rapone,* 603 F.Supp. 268 (E.D.Pa. 1985), that the Pennsylvania regulations governing classification of county prisoners were highly discretionary in character and did not give rise to a state-created liberty interest.

We conclude that there is a genuine issue of material fact as to the reason for Todaro's extended confinement. Because, however, the factfinder could believe Todaro's assertion that his segregative confinement was imposed as a disciplinary measure, we must examine the Pennsylvania regulations governing disciplinary and punishment procedures, rather than focusing exclusively on those regarding classification of prisoners.

■ 37 Pa.Code § 95.240 reads, in relevant part, as follows:

**§ 95.240. Discipline and punishment.**

(a) *Minimum requirements.* The following minimum requirements *shall* apply to discipline and punishment:

(1) A formal report *shall be written* if the infraction jeopardizes the security of the jail, threatens the safety or stall or prisoners, or is a violation of State law.

(2) The disposition of a disciplinary report, whatever the action taken, *shall be documented.*

(3) *Confinement is punishment, therefore no further punishment is permitted unless the prisoner violates the rules and regulations of the prison or violates State law.*

\* \* \* \* \* \*

(7) *No prisoner shall be punished unless he has been informed of the offense alleged against him and given an opportunity to present his defense.* In addition the following shall apply:

(i) The hearing shall be staffed by an impartial tribunal.

(ii) The hearing shall be preceded by notice to the prisoner, in writing, of the charges against him.

(iii) The decision reached shall be based upon evidence raised at the hearing.

(iv) The decision-makers shall state the reason for their determination of guilt if that is the decision reached.

(Emphasis added.)

Unlike the classification regulations, the minimum requirements applied to disciplinary and punishment measures are of a mandatory nature and do not vest prison officials with discretion in their implementation. We hold therefore that the regulations, by their non-discretionary language, confer a state-created liberty interest. Accordingly, there is merit to Todaro's allegation that a constitutional violation may have occurred because of the prison's failure to provide him with a reason for his punishment and an opportunity to present a defense through a hearing.

The language of the Somerset County Prison Handbook is in conformity. Section 5001 of the handbook lists causes for disciplinary action. The only category which could conceivably relate to Todaro's letter writing is a catch-all provision relating to conduct "which has a serious adverse effect on prison discipline, order and security."

In the event that disciplinary action is indeed required, § 5002 provides:

**5002 Disciplinary Action**
Staff members *will prepare* a "Misconduct Report" on all rule violations *and advise the inmate* at the time of the violation that this "Misconduct Report" is being prepared. *The resident will*

*have at least 24 hours advance notice of the hearing of the case. The resident will be permitted to prepare his case and call his witnesses at the time of the hearing.*

\*　\*　\*　\*　\*　\*

2. Behavior Hearing—After a Misconduct Report has been filed, *the inmate will be notified of his hearing date and will be given a written notice of the claimed violation at least 24 hours in advance of appearance before the Behavior Clinic.* The resident will appear before the Behavior Clinic within 72 hours of the filing of the written allegation.

(Emphasis added.)

Thus, the prison's own rules and regulations dictate that a report be prepared and that a prisoner be so advised. The rules also order that, unless waived, the inmate must have a hearing. Once again, these procedures are required and are not implemented at the discretion of the prison officials. The defendants argue that the handbook provisions outlining the *types* of summary punishment are discretionary. We agree, but this fact is irrelevant. The precursory procedures before punishment is imposed, if indeed the factfinder determines that punishment occurred here, are our concern and they are clearly mandatory in nature.

The commanding tone of both the regulations and the handbook directing the proper procedures to be followed before disciplinary action can be imposed gives rise to a state-created liberty interest for Todaro. Accordingly, if his confinement was part of a punishment, and we make no comment upon this disputed factual conclusion, then failure to provide him with a hearing under such circumstances may constitute a deprivation of due process rights guaranteed by the fourteenth amendment. This being so, a cognizable § 1983 claim may exist.

### III.

#### First Amendment

■ In addition to his due process claim, if Todaro was placed in confinement in retaliation for his letters, he arguably has a § 1983 claim on the basis of deprivation of his rights under the first amendment.

In *Brooks v. Andolina*, 826 F.2d 1266 (3d Cir.1987), we discussed the Supreme Court's decision in *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), where the Court held that prison regulations concerning mail censorship must further at least one of the *substantial* governmental interests of security, order and rehabilitation. *See Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (constitutionally impinging regulation valid if related to legitimate penological interest; reviewed under lesser standard than strict scrutiny). We then decided that the restrictions on interference with prison mail are not confined to the mailing of the letter and are extended to prohibiting punishing an inmate for contents of letters. We concluded that the disciplinary action in *Brooks*, a 30 day punitive segregation, violated the inmate's clearly established first amendment rights. *Id.* at 1269.

Todaro's alleged situation mirrors that of the inmate in *Brooks*. Since no legitimate penological interest in suppressing critical communications has been articulated, Todaro's confinement, if determined to be a punishment for communicating his criticisms of the conditions of his incarceration, may be violative of the first amendment.

### IV.

#### John Watkins

■ Another unresolved material fact concerns the status of John Watkins. The exact nature of Watkins' official capacity must be resolved to determine whether he was "acting under color of state law." The need for a resolution of this issue is paramount since state action is a requisite for an individual to be liable in a § 1983 claim. It is not as simple as whether or not Watkins was indeed the sheriff or even the acting sheriff at the time of the incident. A private party jointly engaged with a state official in a challenged action can be considered as acting under color of state law for § 1983 purposes. *Darr v. Wolfe,*

**50**

767 F.2d 79 (3d Cir.1985). Accordingly, the facts concerning Watkins' status at the jail during March 12 through March 15 must be further explored to determine if he was properly named as a defendant.

It is undisputed that at the time of the alleged incident Watkins had not yet been sworn in as Sheriff of Somerset County. This event occurred on March 27, 1986. However, it is likewise unrebutted that Watkins was at the jail during the relevant time period, spoke to Todaro and allegedly informed him of the reasons why he was in the holding cell.

Before this matter is ripe for summary judgment, this material fact must be uncontested. If not, then it is a question to be resolved by the factfinder.

### V.

Because these factual issues have not been satisfactorily resolved and because they involve material issues impacting the outcome of this matter, we will vacate the district court's grant of summary judgment in favor of Bowman and Watkins and remand for proceedings consistent with this opinion.