David ENGEL, Appellee,

v.

J. WENDL, Larry Brimeyer, Appellants.

No. 90–1804.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 13, 1990.

Decided Dec. 7, 1990.

Application for Attorney Fees Denied
Jan. 31, 1991.

Gordon E. Allen and Layne M. Lindebak, Asst. Attys. Gen., Des Moines, Iowa, for appellants.

Philip B. Mears, Iowa City, Iowa, for appellee.

Before LAY, Chief Judge, FAGG, Circuit Judge, and LARSON,* Senior District Judge.

PER CURIAM.

J. Wendl and Larry Brimeyer appeal the district court's denial of their motion for summary judgment based upon qualified immunity. We affirm.

Wendl and Brimeyer were members of the Disciplinary Committee at the Iowa Men's Reformatory in 1987. David Engel, an inmate at the Reformatory, sent an anonymous note to prison officials stating: "Please get J. Freeman and Placio [sic] off the yard as soon as possible before they get hurt. Their life is in danger. I think they work in laundry." Engel told officials he wrote the note because he believed another inmate, Cavallaro, intended to harm Freeman and Palacio. In March, 1987, a disciplinary committee comprised of Wendl, Brimeyer, and a third person not a defendant to this action found Engel had violated several rules of the institution by writing his note. The infractions included making threats or intimidation, obstructive or disruptive conduct, and misuse of communications.[1] As a result, Engel lost sixteen days of good time credit, was required to pay inmates Freeman and Palacio compensation for wages they lost while in protective custody, and was required to serve fifteen days in solitary confinement and a minimum of thirty days in disciplinary detention.

Engel instituted a state post-conviction action. In June, 1988, the state district court reversed the disciplinary action, find-

---

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The prison officials apparently believed that Engel's note did not express a sincere desire to

protect the other inmates. Instead, they thought Engel was "dropping a note" on Freeman and Palacio so they would be put into protective custody lockup where they could not enjoy the normal yard privileges.

ing that the "record is void of any evidence to justify a finding of guilt...." *Engel v. State*, No. CL140–1087 (6th Dist., Iowa, June 22, 1988). The Iowa Court of Appeals affirmed by an equally divided court in an unpublished decision. Engel then instituted this action in federal district court seeking damages for violation of his constitutional due process rights. Wendl and Brimeyer moved for summary judgment based upon qualified immunity, their motion was denied, and this appeal followed. Engel moved for summary judgment on the issue of whether the defendants possessed evidence supporting their disciplinary action. Wendl and Brimeyer did not oppose Engel's motion and it was granted.[2]

ANALYSIS

 Under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1974), government officials performing discretionary functions generally are shielded from liability for civil damages if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would know." *Id.* at 818, 102 S.Ct. at 2738. The Court in *Harlow* established that in passing upon the issue of this qualified or "good faith" immunity, courts must apply an objective standard of reasonableness. *Id.; Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). In determining the validity of a qualified immunity defense the issue is not whether the defendant acted wrongly, but whether reasonable persons would know that they acted in a manner which deprived another of a known constitutional right. *See Malley v. Briggs*, 475 U.S. 335, 344–45, 106 S.Ct. 1092, 1097–98, 89 L.Ed.2d 271 (1986)

(holding that police officers applying for warrant were shielded from liability if a reasonable police officer could have believed there was probable cause to support the application).[3] In addition, the constitutional claim asserted by the plaintiff must not be of a purely general or abstract nature, but instead must be somewhat particularized, so that a reasonable official would understand that the action taken violates that right. *Anderson*, 483 U.S. at 639–40, 107 S.Ct. at 3038–39.[4]

 All parties agree that the established rule from which Engel's constitutional due process allegation springs is that the prison disciplinary committee must have had "some evidence" supporting its decision. *See Superintendent v. Hill*, 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2773–74, 86 L.Ed.2d 356 (1985); *Wilson v. Farrier*, 372 N.W.2d 499, 501 (Iowa 1985). The state court found in the post-conviction action that Wendl and Brimeyer did not possess any evidence that Engel was guilty of wrongdoing, and the district court in this case granted Engel's summary judgment motion upholding that finding. Thus it has already been established that no evidence existed to support the defendants' disciplinary action. This fact, however, does not necessarily decide the qualified immunity issue. The total absence of evidence to sustain a judgment on the disciplinary case does not determine whether reasonable prison officials would have known that they were acting in violation of the right. In other words, in this case it has already been determined that Wendl and Brimeyer possessed no evidence to support their disciplinary action. The question remaining is whether reasonable officials would have known that imposing punishment on an inmate without evidence to support their

2. Engel argued that the state court's determination that there was no evidence to support the conviction precluded that issue from being re-litigated and that the record established that there was in fact no evidence to support the defendants' disciplinary action. Wendl and Brimeyer do not challenge the district court's grant of summary judgment on this issue and it is thus not before the court.

3. We note that the very conduct in question need not previously have been held unlawful, only that in light of pre-existing law the unlawfulness of the conduct be apparent. *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039.

4. The rationale behind *Anderson* is to avoid abstract claims that certain official actions were somehow violative of such general rights as "due process" or "the fourth amendment" and thus convert the rule of qualified immunity into one of "virtually unqualified liability." *Anderson*, 483 U.S. at 639, 107 S.Ct. at 3039. When such nonspecific claims are allowed, it cannot be said that officials had adequate notice that their particular actions could give rise to liability. Such notice of clearly established law is the cornerstone of the *Harlow* objective inquiry.

150

decision violates a specific due process right.

Wendl and Brimeyer argue that the district court failed to find that the "some evidence" rule is a specific enough due process standard in light of *Anderson* to justify a finding that reasonable prison officials would know they were violating Engel's rights. Although the district court does not explicitly acknowledge the rule that the claim must be specific enough so that reasonable officials would have notice that their actions violated established rights, the court's analysis shows an implied understanding of the rule. We find that the record demonstrates that reasonable prison officials would have known they were violating a clearly established and specific right when they punished Engel without having some evidence of a rule infraction.[5]

The established rule that due process is violated unless prison disciplinary committee members possess "some evidence" before finding an inmate guilty of breaking institution rules satisfies the requirement that the alleged due process violation be specific. The "some evidence" standard reflects the common-sense idea that prison officials cannot be completely arbitrary in establishing punishment. The right of inmates not to be punished unless officials have evidence establishing a violation is akin to the right not to be punished for committing a lawful act, which this court has found to be a clearly established and specific due process right. *Coffman v. Trickey*, 884 F.2d 1057, 1063 (8th Cir.1989), *cert. denied* — U.S. —, 110 S.Ct. 1523, 108 L.Ed.2d 763 (1990). The law in this case clearly was established that due process is violated unless prison officials have some evidence to support their disciplinary action.

CONCLUSION

Because the specific and clearly established "some evidence" standard was in place in 1987 when the due process viola-

tions occurred, and reasonable officials would have known their actions violated this standard, Wendl and Brimeyer are not entitled to qualified immunity. The district court order is therefore AFFIRMED and the case remanded for trial on any remaining issues.

ORDER

Jan. 31, 1991.

PER CURIAM.

The application for attorney fees is denied. Although plaintiff was successful in the appeal on the issue of qualified immunity, plaintiff has yet to establish that he is a "prevailing party" under section 1988. *See Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (per curiam).

---

5. We emphasize that Wendl and Brimeyer's *subjective* beliefs about the propriety of their actions are not part of the court's inquiry into whether qualified immunity exists. The defendants testified at the state court post-conviction proceeding concerning their reasons for punishing Engel. The state court chose not to believe their testimony, finding that there was in fact no evidence supporting the defendants' actions. Engel moved for summary judgment in the district court on the basis of the state court ruling and the district court granted his motion.