Rick Dean BRESSMAN, Plaintiff,

v.

Hall FARRIER, Paul Grossheim, Calvin Auger, John Sissel, Kurt Gunther, J. Manternach, Larry Brimeyer, and Butcher.

No. C 87–0123.

United States District Court, N.D. Iowa, Cedar Rapids Division.

Feb. 10, 1993.

**232**

Philip Mears, Iowa City, IA, for plaintiff.

William Hill, Asst. Atty. Gen., Des Moines, IA, for defendants.

## ORDER

DONALD E. O'BRIEN, District Judge.

This matter comes before the Court on the defendants objections to the Report and Recommendation of Chief United States Magistrate Judge John A. Jarvey. The Court held a telephonic hearing on the objections on Monday, January 25, 1993. For the reasons stated herein, the objections are overruled.

## I. FACTS

The facts of this case are outlined in full in the Report and Recommendation (R & R) of Chief United States Magistrate Judge John A. Jarvey and are adopted in full by this Court. R & R at 1–3. In summary, plaintiff was an inmate at the Iowa Men's Reformatory (IMR) in June of 1985. On June 22, 1985, plaintiff received a "major" disciplinary report for a violation of Rule 26 (verbal abuse) of the disciplinary rules governing inmates at IMR for comments included in a letter plaintiff wrote to his brother. Specifically, Bressman wrote, "yeah, their (sic) real assholes, my counselor is a dick head, the officers working here are punks, the ladies in the mail room are bitches, now I hope they all read this letter and get their kicks off of it." Rule 26 reads:

> **Verbal Abuse:** A resident commits verbal abuse when the resident subjects another person to abusive or defamatory language, remarks, or gestures, in writing or orally, and includes insolence disrespect [sic] to another person.

Plaintiff pleaded guilty to the disciplinary violation and remained silent at his hearing. Plaintiff was found guilty of violating IMR Rule 26 (verbal abuse), and spent two days in disciplinary solitary confinement as a result. Plaintiff appealed the decision arguing that the discipline violated his First Amendment right of free speech, but was unsuccessful. This federal court action followed.

The matter was referred to Judge Jarvey for a Report and Recommendation, which was filed and is at issue herein. Judge Jarvey found that the disciplinary action violated plaintiff's First Amendment right of free speech. Judge Jarvey also found that the preponderance of the evidence standard probably was required as the standard of proof in a prison disciplinary hearing but left the question open for another day. Judge Jarvey recommended that judgment in the amount of $80.00 ($40 per day for two days of solitary confinement) be entered in favor of the plaintiff and against defendants Grossheim, Sissel, Gunther, Manternach, and Brimeyer. Judge Jarvey also recommended judgment be entered against plaintiff and in favor of defendants Farrier, Auger, and Butcher.

## II. DISCUSSION.

This Court must conduct a *de novo* review of the objections to Judge Jarvey's R & R. 28 U.S.C. § 636(b)(1)(B). The defendants object to Judge Jarvey's R & R on three grounds. First, defendants object to Judge Jarvey's finding that they violated plaintiff's First Amendment right to free speech. Second, defendants object to Judge Jarvey's discussion of the standard of proof. Third, and finally, defendants object on the ground that Judge Jarvey failed to consider and make findings on the issue of qualified immunity. The first objection is the most serious and the Court will address it last. The second

objection is meritless because Judge Jarvey's R & R specifically withholds ruling on the standard of proof question. R & R at 12.

The third objection is correct, for what it's worth; Judge Jarvey did not discuss qualified immunity. It appears to this Court that the issue was not really presented to him. Defendants raised the issue in their answer [1] but did not pursue it further. Defendants did not move for summary judgment on the issue nor brief the issue of qualified immunity in their post-trial brief. Further, it does not appear from the transcript that any evidence concerning qualified immunity was presented to Judge Jarvey. Judge Jarvey is not psychic. If defendants really wanted a ruling on the issue of qualified immunity, it was their obligation to make the issue known to Judge Jarvey.

█ Even if the Court considers qualified immunity, notwithstanding defendants failure to present the issue, the argument is flawed. The law regarding outgoing prisoner mail was established in 1974 in *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), and has not changed much in the nineteen (19) years since. *See, e.g., Thornburgh v. Abbott*, 490 U.S. 401, 413, 109 S.Ct. 1874, 1881, 104 L.Ed.2d 459 (1989) (*Procunier v. Martinez* still the correct standard in cases involving outgoing inmate mail). The United States Court of Appeals for the Eighth Circuit has been applying *Procunier v. Martinez* since 1974, *see Finney v. Arkansas Bd. of Corrections*, 505 F.2d 194, 210–11 (8th Cir.1974), and the first cases involving an Iowa correctional facility were decided in 1978. *See Watts v. Brewer*, 588 F.2d 646, 649 (8th Cir.1978); *Wycoff v. Brewer*, 572 F.2d 1260, 1263 (8th Cir.1978). It is well-established in the Eighth Circuit and elsewhere that prison officials "may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements." *Travis v. Norris*, 805 F.2d 806, 808 (8th Cir.1986) (quoting *Procu-*

*nier v. Martinez* ); *see also Brooks v. Andolina*, 826 F.2d 1266, 1267–69 (3d Cir.1987). It cannot be said with a straight face that a reasonable prison official would not have known that Bressman's rights were being violated. *See Loggins v. Delo*, No. 90–2874, slip op. at 4, 985 F.2d 565 (Table) (8th Cir. 1991);[2] *McNamara v. Moody*, 606 F.2d 621, 625–26 (5th Cir.1979).

That brings the Court to the bottom-line question: Does disciplining a prisoner for abusive comments about prison staff in a letter to a family member violate the prisoner's First Amendment right to free speech? Judge Jarvey found that a violation of the prisoner's First Amendment right occurs when the prisoner is disciplined for comments that are not directed at particular members of the prison staff. Defendants object to this finding on two grounds. First, defendants object to Judge Jarvey's factual finding that plaintiff's comments were not directed at a staff member. Second, defendants contend that intent or direction is not necessary to save such discipline from constitutional invalidity.

█ With regard to the factual question, defendants' bottom-line position is that there is no doubt that Bressman had knowledge that the individuals about whom he made the comments could read his letter which means that he directed his comments toward those people. The Court has examined that transcript and is persuaded that Judge Jarvey correctly found that Bressman did not direct his comments toward any particular staff member. Bressman merely put the letter to his brother in the ordinary mail channels without doing anything more to cause the subjects of his disrespectful commentary to read the commentary. To say that Bressman knew his letter could be read is not the same as saying that Bressman directed disrespectful comments to or subjected someone to disrespectful comments. A prisoner cannot be disciplined for comments made in

---

1. The answer was a stock or form answer just like the stock answer filed in every other prisoner case. The Court is not denigrating the use of forms, but only makes this observation because it helps explain why qualified immunity was not a major issue in Judge Jarvey's R & R.

2. The Court recognizes that *Loggins v. Delo* is an unpublished opinion technically not appropriate for citation as precedent. Nevertheless, the opinion reveals how future panels of the Eighth Circuit likely will resolve the very question posed by plaintiff.

outgoing mail just because the inmate is aware that the mail can be read. *McNamara v. Moody*, 606 F.2d 621 (5th Cir.1979).

Defendants also contend that there is no legal requirement that disrespectful or abusive comments be made directly to an individual for those comments to be a valid subject of discipline. *Reysack v. State*, 440 N.W.2d 392, 393–94 (Iowa 1989). *Reysack* does not stand for the defendants' proposition that it does not matter whether or not an inmate's comments are directed toward the object of the abuse. *Reysack* turned on the fact that the comments were oral, directed to someone else within the prison, and *were disrespectful to whomever the comments were directed. Reysack*, 440 N.W.2d at 394 (emphasis added). The security concerns implicated in *Reysack* are obvious, and properly the subject of the verbal abuse rule. *Reysack* does not apply to Bressman's situation. Here, Bressman's comments were in writing, directed to his brother outside the prison, and were not disrespectful to his brother. The risk of a security breach or a breakdown of discipline is virtually nonexistent.

The Court has considered the defendants' objections with care but finds that Judge Jarvey reached the right result for the right reasons. Accordingly,

**IT IS ORDERED** that defendants' objections to the Report and Recommendation of Chief United States Magistrate Judge John A. Jarvey are overruled. The Report and Recommendation is adopted.

## REPORT AND RECOMMENDATION

JARVEY, United States Magistrate Judge.

This matter comes before the court pursuant to trial on the merits conducted on De-

cember 17, 1991 at the United States Courthouse, Cedar Rapids, Iowa. By order dated November 1, 1991, this matter was referred to the undersigned United States Magistrate Judge for the issuance of a report and recommendation. The court recommends that judgment be entered in favor of the plaintiff.

## FINDINGS OF FACT

In June 1985, Rick Dean Bressman was an inmate at the Iowa Men's Reformatory (IMR) in Anamosa, Iowa. On June 22, 1985, Bressman received a "major" disciplinary report concerning certain comments he had written in a letter to his brother. Specifically, Bressman wrote "yeah, their real assholes, my counselor is a dick head, the officers working here are punks, the ladies in the mail room are bitches, now I hope they all read this letter and get their kicks off of it." [1] Mail room personnel read the letter and a guard issued the disciplinary report.[2]

Another officer investigated the report and talked with Bressman. Bressman admitted writing the letter and pleaded guilty to the violation. Bressman's report was then referred to the IMR Adjustment Committee. This committee is composed of three staff members who meet daily to consider disciplinary reports. At the hearing, the inmate is brought into the hearing room, the report is read aloud, and the inmate is given the opportunity to make statements on his on behalf. Bressman made no comments at this hearing. The adjustment committee, consisting of defendants Brimeyer,[3] Manternach, and Gunther, found Bressman guilty of violating IMR Rule 26. That rule states:

> Verbal Abuse: A resident commits verbal abuse when the resident subjects another person to abusive or defamatory language, remarks, or gestures, in writing or orally,

---

1. The actual letter written by Bressman was destroyed by IMR approximately five years after it was confiscated. This quotation is taken from the disciplinary notice issued to Bressman on June 22, 1985 at IMR. The report was written by staff member Butcher.

2. IMR mailroom personnel randomly read outgoing letters. Testimony of Larry Brimeyer, Transcript at 34, line 19.

3. Larry Brimeyer is the Administrative Law Judge at IMR. He is the only administrative law judge at the prison. He has been employed in this position for eight years and was involved in disciplinary proceedings at the prison for many years prior to attaining his current position.

and includes insolence disrespect [sic] to another person.

IMR Resident Information Guide, Plaintiff's Ex. 2, at 12. As a result of the discipline, Bressman spent two days in disciplinary solitary confinement. Bressman appealed the decision, first to Assistant Warden John Sissel and then to Paul W. Grossheim, the Deputy Director for Institutions of the Iowa Department of Corrections. Both appeals were unsuccessful. Bressman then brought this action in federal court.

## CONCLUSIONS OF LAW

The court has jurisdiction over the subject matter of this dispute and over the person of the parties.

In his original complaint, filed on August 5, 1987, plaintiff asserted causes of action based on the First, Eighth, and Fourteenth Amendments. On October 17, 1991, plaintiff amended his complaint to add an additional Fourteenth Amendment claim based on the use of the "some evidence" test by the prison's adjustment committee. In pre-trial briefs, plaintiff narrowed his claims to the First and Fourteenth Amendments.

■ 1. *First Amendment.* A prison inmate "retains those First Amendment rights not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). Legitimate penological objectives include deterrence of crime, rehabilitation, and preservation of internal security. *Id.* at 822–23, 94 S.Ct. at 2804. In *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), the Court held that censorship of prison mail is justified if two criteria are met:

> First, the regulation or practice must further an important or substantial governmental interest unrelated to the suppression of expression. Prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements. Rather, they must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilita-

tion. Second, the limitation of the First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interests involved. Thus a restriction on inmate correspondence that furthers an important or substantial interest of penal administration will nevertheless be invalid if its sweep is unnecessarily broad.

*Id.* at 413–14, 94 S.Ct. at 1811. While a different standard applies to regulations affecting incoming mail and publications, see *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), the Supreme Court has made clear that *Martinez* remains the proper standard to apply to regulations of outgoing mail. *See Thornburgh v. Abbott,* 490 U.S. 401, 413, 109 S.Ct. 1874, 1881, 104 L.Ed.2d 459 (1989); *see also Martucci v. Johnson,* 944 F.2d 291, 295–96 (6th Cir.1991) (applying *Turner* to incoming mail and *Martinez* to outgoing mail).

The Eighth Circuit and other courts have agreed that, under *Martinez,* prison officials "may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements." *Travis v. Norris,* 805 F.2d 806, 808 (8th Cir.1986) (quoting *Martinez,* 416 U.S. at 413, 94 S.Ct. at 1811); *Loggins v. Delo,* No. 90–2874, slip op. at 4, 985 F.2d 565 (8th Cir. December 6, 1991); *see also Brooks v. Andolina,* 826 F.2d 1266, 1267–69 (3d Cir.1987) (prison officials may not censor unflattering statements made in letters to outsiders).

Under *Martinez*'s two-part test, the first issue is whether the prison's discipline of plaintiff "further[ed] an important or substantial governmental interest unrelated to the suppression of expression." *Id.* Defendants assert that the governmental interest to be protected is the overall security of the prison. Allowing inmates to show disrespect to guards, defendants argue, inhibits the institution's ability to maintain order and discipline.

The plaintiff does not quarrel with this general policy. As this case demonstrates, defendants only implement this policy when an inmate is directly abusive or disrespectful to a staff person. Defendants concede that

plaintiff would not have been subject to discipline if the letter had not contained the line, "now I hope they all read this letter and get their kicks off of it." *See* Testimony of Larry Brimeyer, Transcript at 27. Defendant Brimeyer also appears to concede that no discipline would have occurred if plaintiff had prefaced his descriptions of prison personnel with language such as "In my opinion, ..." or "I believe that ..." *Id.*

Given these concessions, the issue becomes a factual one of whether Bressman intended for his counselor, "the officers working here," and "the ladies in the mail room" to read his comments. Several cases support defendants contention that "a prisoner has no right to address prison officials in a disrespectful or abusive manner...." *Scarpa v. Ponte*, 638 F.Supp. 1019, 1028 (D.Mass.1986); *see also Savage v. Snow*, 575 F.Supp. 828, 836 (S.D.N.Y.1983); *Hawkins v. Elliot*, 385 F.Supp. 354, 358 n. 15 (D.S.C.1974). In this case, however, Bressman did not directly address the prison personnel. Further, Bressman did nothing that was calculated to cause the objects of his disrespectful comments to read his letter. He simply sent it through ordinary prison mail channels to his brother knowing that review by prison employees was possible. His comment about hoping that they would read it adds absolutely nothing to the question of whether it was directed towards them. At best, it reflects his enjoyment of his ability to make such comments to his brother.

In *McNamara v. Moody*, 606 F.2d 621 (5th Cir.1979), *cert. denied*, 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980), the prisoner wrote a letter in which he accused a guard of engaging in sex acts with a cat. The court, relying on *Martinez*, found that the resulting discipline of the prisoner violated his First Amendment rights: "[C]oarse and offensive remarks are not inherently breaches of discipline and security, nor is there any showing that they will necessarily lead to the breaking down of security or discipline." *Id.* at 624. The court noted that the prisoner's accusations were written rather than stated orally to the guard, and were written in a letter to the prisoner's girlfriend and not directly to the guard. *Id.* The court

concluded that suppression of the letter "is clearly proscribed by the First Amendment." *Id.* at 625.

The court finds that, given the standards set forth in *Martinez* and *McNamara*, Bressman's letter was not directed toward his counselor, certain unnamed officers, and the "ladies in the mail room." *Prison Rule* 26 may not be used to discipline inmates under these circumstances. In short, the disciplinary action taken against plaintiff by defendants violated his First Amendment right of free speech.

2. *Fourteenth Amendment.* Plaintiff next contends that the IMR adjustment committee's application of the "some evidence" test when reviewing plaintiff's disciplinary report violates the due process clause of the Fourteenth Amendment. Defendant Brimeyer was examined and cross-examined extensively on this point at trial, and the issue has generated some confusion.

Defendants assert that, pursuant to *Superintendent v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985), the proper standard of proof for a prison disciplinary board is the "some evidence" standard. Some courts, including the Southern District of Iowa, have held that *Hill* only addresses the proper standard of judicial review, and does not address the prison's initial standard of proof. *See, e.g., Brown v. Fauver*, 819 F.2d 395, 399 n. 4 (3d Cir.1987); *Goff v. Dailey*, 789 F.Supp. 978 (S.D.Iowa 1992); *Young v. Coughlin*, No. Civ–87–877E, 1989 W.L. 132012, at *2 (W.D.N.Y.1989). Other courts, however, have relied upon *Hill* to hold that prison disciplinary boards need only "some evidence" to find a prisoner guilty of a rule violation. *See, e.g., Strickland v. Beyer*, No. 88–2895, 1990 WL 24917, 1990 U.S.Dist. Lexis 2510 (D.N.J. March 5, 1990). One commentator has noted the uncertainty of the courts as to whether *Hill* applies to the standard of proof or only to the standard of review. *See* J. Gobert & N. Cohen, *Rights of Prisoners* § 8.10, at 279 (Supp.1991) ("The standard of review established in ... *Hill* ... has inevitably become confused with the question of the quantum of evidence which must be before a disciplinary body for that body to make a decision.").

A recent Eighth Circuit case, *Engel v. Wendl*, 921 F.2d 148 (8th Cir.1990), also cites *Hill* for the proposition that "the prison disciplinary committee must have had 'some evidence' supporting its decision." *Id.* at 149. In *Goff*, Judge Longstaff distinguished *Engel* on the basis that the standard of proof was not an issue on appeal, and the Court of Appeals' comments were therefore directed only to the standard of review. *Goff*, 789 F.Supp. at 984–85. This court agrees with this interpretation. In *Engel*, for example, the court summarized its opinion as follows:

> The law in this case · clearly was established that due process is violated unless prison officials have some evidence to support their disciplinary action.

*Engel*, 921 F.2d at 150. This court interprets this sentence to mean that the appropriate standard is not "some evidence" when prison officials *take* disciplinary action; the standard is "some evidence" only when prison officials must *support* their disciplinary action when challenged in court.

The parties and the court extensively questioned defendant Brimeyer on what standard of proof is employed by the IMR grievance committee. Brimeyer unquestionably labelled the committee' standard as the "some evidence" standard. *See* Transcript at 29. When pressed further, however, he indicated that the committee actually applies a higher standard. Assistant Attorney General Hill, for example, asked Brimeyer: "[J]ust because the officer files a report, that doesn't mean the inmate is guilty?" to which Brimeyer responded, "Correct." *Id.* at 52. The court then asked Brimeyer the following:

> THE COURT: If the inmate was slightly more believable than the guard, would the inmate be found guilty?

> THE WITNESS: No. If the officer can't say with certainty, then we would not make a finding.

*Id.* at 55. Despite this apparent admission that the "some evidence" test is not used, Brimeyer later admitted the following when questioned by plaintiff's counsel:

> MR. MEARS: [H]aven't you told me when you check with the officer if the officer stands by his story, you automatically find the inmate guilty?

> THE WITNESS: Yes.

*Id.* at 57. This statement appears to be an adoption of the "some evidence" test. Brimeyer also stated, however, that "when an inmate denies and says it didn't happen that way at all, then we will check with the officer." *Id.* This statement indicates that the officer's report does *not* automatically result in a violation. However, the record is unclear about this also.

The court is confused about the standard that is being applied in these prison disciplinary hearings. Obviously, the standard used by the committee is extremely important to the validity of the entire discipline process. Although the court does not doubt the sincerity and good intentions of defendant Brimeyer, the court is quite concerned that the IMR adjustment committee is adjudicating prisoner grievances in a manner inconsistent with the inmates' Constitutional right to due process.

The defendants should be aware that the proper standard of proof to be used by the IMR adjustment committee is the "preponderance of the evidence" standard. The due process requirements set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) can only be satisfied by use of this test. *See Goff*, 789 F.Supp. at 984. "Preponderance of the evidence" is evidence that is more convincing than opposing evidence. The test requires that the committee weigh the evidence for and against the inmate and rule in favor of the inmate if a preponderance of the evidence indicates that a rule was not violated, and against the inmate if a preponderance of the evidence indicates that a rule was violated. Where the evidence presented at the hearing conflicts on a material factual issue, an inmate cannot automatically be found guilty of the offense simply because the reporting officer states that he is sure of his allegations. Rather, the conflicting evidence must be weighed and the case decided in favor of the more convincing evidence.

There are two good reasons why the court should not resolve the question of whether the committee employed the proper standard of proof to judge Bressman's conduct. First,

Bressman presented no evidence to contradict the allegations in the disciplinary report. In fact, he pleaded guilty to it. The evidence is uncontradicted to this day. Second, having found that Bressman's speech was protected, no standard of proof can affect the outcome of this case. Accordingly, the court leaves this question unresolved.

■ 3. *Damages.* Plaintiff was sentenced to two days in solitary confinement. The plaintiff deserves compensation for the loss of liberty that he has suffered. The court believes that damages of $40.00 for each day served in solitary confinement will reasonably and fairly compensate plaintiff for the unjustified confinement.

Upon the foregoing,

IT IS RECOMMENDED that, unless any party files objections[4] to the Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1)(C) and *Fed.R.Civ.P.* 72(b) within ten (10) days of the service of a copy of this report and recommendation, judgment be entered in favor of the plaintiff in the amount of $80.00 plus interest, costs and attorney fees as provided for by law against defendants Grossheim, Sissel, Gunther, Manternach, and Brimeyer.

IT IS FURTHER RECOMMENDED that, unless any party files objections to the Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1)(C) and *Fed. R.Civ.P.* 72(b) within ten (10) days of the service of a copy of this report and recommendation, judgment be entered in favor of defendants Farrier, Auger, and Butcher.

May 12, 1992.

4. Failure to file timely objections may result in waiver of the right to appeal questions of fact. *See Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 474–75, 88 L.Ed.2d 435 (1985); *Thompson v. Nix,* 897 F.2d 356 (8th Cir.1990).