**Lester F. CARROLL, Plaintiff–Appellant,**

v.

**Nancy S. TUCKER, et al., Defendants–Appellees.**

No. 00–2455.

United States Court of Appeals, Seventh Circuit.

Submitted June 18, 2001.*

Decided June 18, 2001.

Before MANION, ROVNER and EVANS, Circuit Judges.

**ORDER**

Illinois prisoner Lester Carroll appeals the entry of summary judgment against him on his claim brought under 42 U.S.C. § 1983 that various prison employees violated his First Amendment Rights by punishing him for writing allegedly insolent comments in an outgoing letter to his wife. We affirm.

On May 14, 1998 Carroll wrote in a letter to his wife a derogatory statement about Assistant Warden Hinsley of the Tamms Correctional Center (where Carroll is incarcerated). The next day Carroll received a disciplinary report charging him with insolence against a prison employee for the insult in the May 14 letter, which had been discovered during a routine spot-check of outgoing mail. Insolence is de-

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a).

fined in the prison regulations as "talking, touching, gesturing, or other behavior which harasses, annoys, or shows disrespect." ILL. ADMIN. CODE 20, § 504, Table A (2001). After receiving the disciplinary report, Carroll wrote a second letter to his wife, dated May 15, 1998, which prison employees also examined during a routine spot-check. In this letter he wrote:

> Since the nosy fags in the mail room are reading my mail, (spot checkn [sic] as they call it), All I can say is to deal with a different Company that these assholes can varify [sic] is legit! ... Since I got a ticket for stating in one of my letters Assistant Asshole Nigger Warden Hinsley I thought I would say it again. One more time: Assistant Asshole Nigger Warden Hinsley. Now issue two more tickets you nosy assholes reading my mail.

Below these statements, Carroll drew a hand with only the middle finger extended upwards, commonly known as "the finger." *See, e.g., Bagley v. Ameritech Corp.*, 220 F.3d 518, 520 n. 1 (7th Cir.2000). As a result Carroll was given a second disciplinary report for insolence. A prison adjustment committee later found him guilty of the two charges and demoted him to prison "Grade C" for two months and placed him in segregation for one month.

After exhausting his administrative remedies, Carroll filed this suit alleging primarily that the named prison officials violated his First Amendment rights by punishing him for the contents of the two letters. The district court referred the case to a magistrate judge, and then the parties moved for summary judgment. The magistrate judge recommended to the district court that partial summary judgment be granted for Carroll on the claim that the defendants violated the First Amendment with respect to the first letter, but not the second. The district court accepted the magistrate judge's recommendation, explaining that Carroll was un-

constitutionally disciplined for the derogatory comment about Assistant Warden Hinsley in the May 14 letter but that the derogatory comments in the May 15 letter implicated the legitimate "interests of order and security inside the prison." The district court then referred the case back to the magistrate judge for a hearing on damages, and Carroll was awarded $1.00. He now appeals only the grant of summary judgment for the defendants on the claim regarding his punishment for the May 15 letter.

■■■ Although it is true that an inmate's interest in sending mail is protected by the First Amendment, a challenged regulation or practice allowing censorship of outgoing mail is constitutional if it promotes "one or more of the substantial governmental interests of security, order, and rehabilitation," and is "no greater than is necessary ... to the protection of the particular governmental interest involved." *Procunier v. Martinez*, 416 U.S. 396, 413, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *see also Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir.1999) (noting that prison security is legitimate governmental interest justifying limitations on inmates' First Amendment rights). We believe that the discipline Carroll received for violating the legitimate prohibition against insolence passes this constitutional standard. First, in *Ustrak v. Fairman*, 781 F.2d 573, 580 (7th Cir.1986), we upheld against a First Amendment challenge the application of a regulation similar to the definition of insolence in this case. The prisoner in *Ustrak* had been punished for writing a letter in which he called prison employees "stupid lazy assholes" and challenged them to "bring their fat asses around the gallery at night." *Id.* Prison officials disciplined the inmate for violating a prohibition against "being disrespectful" to employees of the institution and cursing or using "any other vulgar, abusive insolent, threatening, or

improper language toward any ... employee." *Id.* We concluded the regulation was constitutional—and determined that the prison officials had not abused its application in that case—because we could "imagine few things more inimical to prison discipline than allowing prisoners to abuse guards...." *Id.*

In a more recent case, the Eighth Circuit likewise upheld the constitutionality of disciplinary action taken against a prisoner who had written, in a letter addressed to a former inmate, derogatory language and racial epithets aimed at and intended to be read by the prison's warden. *Leonard v. Nix,* 55 F.3d 370, 375 (8th Cir.1995). Although the Eighth Circuit recognized that usually outgoing personal mail does not implicate prison security concerns, *id.* at 374, and that mere "unflattering remarks" about prison employees are constitutionally protected, the court differentiated the remarks at issue as "written abusive language that is directed not to the addressee but at and to the warden," *id.* at 375. The *Leonard* court moreover distinguished its holding from other cases in which censorship of derogatory remarks about prison employees was held to be unconstitutional, explaining that in those cases the outgoing correspondence was intended solely for the letter's addressee, not prison employees. *Id.* (distinguishing *Loggins v. Delo,* 999 F.2d 364, 367–68 (8th Cir.1993); *Brooks v. Andolina,* 826 F.2d 1266, 1268 (3d Cir. 1987); *McNamara v. Moody,* 606 F.2d 621, 623–24 (5th Cir.1979)).

Like the letter at issue in *Leonard,* the derogatory comments in the May 15 letter are clearly directed at and meant to read by prison employees. Furthermore, Carroll does not dispute that the language he used in the letter is insolent as defined by the Illinois prison regulations, i.e., that the language "harasses, annoys, or shows disrespect." *See* ILL. ADMIN. CODE 20, § 504, Table A. And although he does contend that the prohibition against insolence pertains only to non-written communication, utilizing a "plain meaning" analysis of the insolence definition, it is clear that written words fall under the regulation's prohibition against "other behavior which harasses, annoys, or shows disrespect." *See id.* In sum, because Carroll's derogatory insults in the May 15 letter were admittedly directed at prison employees in violation of a constitutionally legitimate regulation, summary judgment was properly granted for the defendants.

Accordingly, we AFFIRM the judgment of the district court.