**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2097
_____

ROBERT L. HOLBROOK,
                            Appellant

v.

CAPTAIN JOHN KINGSTON;
CAPTAIN CRAIG HAYWOOD;
SUPERINTENDENT LOUIS FOLINO
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2:10-cv-00265)
District Judge:  Honorable Sean J. McLaughlin
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 2, 2014

Before:  AMBRO, SHWARTZ and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed: January 14, 2014)
_____

OPINION
_____

PER CURIAM

        Pro se appellant Robert L. Holbrook appeals from the District Court's order

granting the defendants' motion for summary judgment.  For the following reasons, we

will affirm.

I.

Holbrook is a Pennsylvania state inmate. In 2003, he was transferred to SCI Greene from SCI Huntingdon after an investigation revealed that he had been involved in several incidents involving violence and possible gang-related activities. This investigation also indicated that Holbrook maintained a ranking position in the Fruits of Islam, an inmate organization.

In early 2007, Kingston, the Intelligence Gathering Captain at SCI Greene, conducted a records review involving Holbrook. On January 31, 2007, Kingston issued a Field Intelligence Report (hereinafter, "the Report") to the Intelligence Committee. The Report described Holbrook as a "self-avowed activist" who frequently wrote material considered to be "subversive and revolutionary." The Report detailed several examples of Holbrook's behavior. For example, earlier in January 2007, Holbrook had been mailed a newsletter entitled "The Don't Shank the Guard Handbook," written by the Minister of Defense for the New Afrikan Black Panther Party. This newsletter was intercepted by SCI Greene's Security Office. Holbrook also had mailed three packets of his written material to addresses in England. When these packets were returned, Kingston inspected them and determined that they contained numerous articles written and submitted by Holbrook to "various subversive organizations." The Report also mentioned that Holbrook has known affiliations with the Black Panther Party and the Black Liberation Army.

On February 1, 2007, Haywood, a Security Captain, issued a Security Review regarding Holbrook to the Program Review Committee at SCI Greene. The Security Review indicated that although Holbrook had maintained a "low profile" since his transfer to SCI Greene, he had continued to communicate with known radical organizations. Haywood also noted that Holbrook was still involved in distributing revolutionary and subversive materials, and that he was classified as an escape risk because of his connections with subversive and anti-government organizations.

Based upon the Report and the Security Review, Kingston sought authorization to place Holbrook on a "mail watch" to monitor his non-privileged mail. The Deputy Secretary of the Western Region of Pennsylvania's Department of Corrections ("DOC") approved the mail watch on February 6, 2007. The mail watch was terminated on June 5, 2007.

In December 2007, Kingston informed Superintendent Folino that Holbrook was among several inmates who had received a petition from Theresa Shoats, a resident of Philadelphia. Ms. Shoats is the daughter of Russell Shoats, a Pennsylvania inmate who has a history of affiliation with radical groups and prison violence. Included in this mailing was part of the DOC's policy and procedures manual, a confidential document not meant for public dissemination. Because of this, Kingston requested that Holbrook be placed on mail watch again to ensure that no more inappropriate mailings from Ms. Shoats entered SCI Greene. Folino approved the request, and Holbrook was placed on mail watch from December 6, 2007, until March 6, 2008.

In March 2010, Holbrook filed a complaint pursuant to 42 U.S.C. § 1983, alleging that officials at SCI Greene interfered with his mail. A Magistrate Judge construed Holbrook's complaint as alleging three distinct claims: (1) violation of his First Amendment rights when officials opened and read his outgoing and incoming non-legal mail; (2) violation of his First Amendment rights when officials opened and read a letter from his attorney outside of his presence on January 24, 2007; and (3) violation of his First Amendment rights when officials placed him on mail watch in retaliation for his past correspondence with religious and prison "watch-dog" groups. Although the defendants filed a motion to dismiss Holbrook's claims as barred by the statute of limitations, the District Court denied the motion.

Subsequently, the defendants filed two motions for judgment on the pleadings, which the District Court granted in part as to Holbrook's claim that the opening of his outgoing mail violated his First Amendment rights. Following this, the defendants filed a motion for summary judgment. In accord with Holbrook's intent, the Magistrate Judge applied the continuous violation doctrine and construed Holbrook's claim regarding the mail watch as alleging that his First Amendment rights were violated by the monitoring of all his incoming and outgoing mail between February 2007 and March 2008. She recommended that the defendants' motion for summary judgment be granted because the evidence did not demonstrate that the defendants had placed Holbrook on mail watch in retaliation for his prior correspondence. The Magistrate Judge also recommended that summary judgment be granted to the defendants on Holbrook's claim that his First

4

Amendment rights were violated by the opening of a piece of legal mail outside his presence because his claim was barred by the statute of limitations. The District Court adopted this recommendation and entered judgment in favor of the defendants. This appeal followed.[1]

## II.

On appeal, Holbrook challenges only the District Court's determination that the defendants were entitled to summary judgment on his retaliation claim. He does not challenge the District Court's grant of summary judgment on his claim regarding the opening of his legal mail outside of his presence on January 4, 2008; accordingly, we deem this issue waived. See FDIC v. Deglau, 207 F.3d 153, 169-70 (3d Cir. 2000).

As an initial matter, we agree with the District Court that Holbrook satisfied the first two prongs for a retaliation claim. His prior correspondence with religious and prison "watch-dog" groups is constitutionally protected conduct. See Procunier v. Martinez, 416 U.S. 396, 409, 413 (1974); Brooks v. Andolina, 826 F.2d 1266, 1268 (3d Cir. 1987); see also Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Additionally, the imposed mail watch was sufficiently adverse to deter Holbrook from exercising his

---

[1] We have jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review over the District Court's order granting summary judgment. See Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009). Summary judgment is appropriate only when the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the burden of demonstrating that there is no genuine issue as to any material fact, and summary judgment is to be entered if the evidence is such that a reasonable fact finder could find only for the moving party." Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir.

constitutional rights, as evidence in the record reflects that he ceased submitting articles for publication, cancelled his subscriptions to newspapers and newsletters, and "severely curtailed" his correspondence with fellow activists. See Rauser, 241 F.3d at 333.

The third and final prong of a retaliation claim requires the plaintiff to demonstrate that the constitutionally protected conduct was "a substantial or motivating factor" for the adverse response. See Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002). The defendants did not argue in the District Court that Holbrook had failed to meet this prong, and the District Court did not address it. Rather, the District Court determined that the evidence established that the defendants would have placed Holbrook on a mail watch even in the absence of his correspondence. See Rauser, 241 F.3d at 334 (noting that if a prisoner makes a prima facie case, the defendant then has the burden of showing that the same disciplinary action would have been taken even in the absence of the protected activity "for reasons reasonably related to a legitimate penological interest"). It is this determination with which Holbrook takes issue.

We have previously noted that "prisoners, by virtue of their incarceration, 'do not forfeit their First Amendment right to use of the mails.'" Jones v. Brown, 461 F.3d 353, 358 (3d Cir. 2006) (quoting Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995)). The Supreme Court has recognized, however, that prisoners' rights "must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." Thornburgh v. Abbott, 490 U.S. 401, 407 (1989) (quoting Turner v.

2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

Safley, 481 U.S. 78, 85 (1987)).  Accordingly, the right to receive and send mail can be restricted for legitimate penological interests.  See id.; see also Turner, 481 U.S. at 89.

We agree with the District Court that the defendants' decision to place Holbrook on a mail watch was reasonably related to the legitimate penological interest of institutional security.  See, e.g., Duamutef v. Hollins, 297 F.3d 108, 112-14 (2d Cir. 2002); United States v. Felipe, 148 F.3d 101, 107-08 (2d Cir. 1998) (citing United States v. Workman, 80 F.3d 688, 699 (2d Cir. 1996)).  Indeed, the record establishes that officials at SCI Greene have classified Holbrook as an escape risk because of his connections to radical, subversive, and anti-government organizations.  The record is also replete with examples of Holbrook's long history of misconduct and "poor institutional adjustment" within the DOC.  Therefore, when officials learned of Holbrook's attempted receipt of both "The Don't Shank the Guard Handbook" and the portion of the DOC policies and procedures handbook, they reasonably believed that placing a mail watch on Holbrook would reveal whether there was any potential threat to security at SCI Greene.

In his brief, Holbrook raises several arguments as to why the defendants' evidence supporting their legitimate penological interest is pretextual.  For example, although Holbrook asserts that Kingston is not credible because he has previously been admonished for placing false information in inmates' files, he failed to submit any evidence to support this allegation.  Holbrook further alleges that the defendants' assertions were pretext because they failed to describe the content of his writings that they considered to threaten security.  However, the record reflects that the defendants

7

were not as concerned with the content of Holbrook's articles as they were with the fact that he had submitted these articles to organizations considered by the DOC to be radical and subversive. Finally, Holbrook asserts that his communication with Ms. Shoats did not support the imposition of the mail watch because he was corresponding with her regarding articles for a conference on long-term segregation in DOC facilities. Again, however, it was Ms. Shoats' attempt to send a portion of a confidential DOC policy and procedure manual to him and other inmates, not her correspondence regarding any articles, that led the defendants to impose the second mail watch on Holbrook to protect institutional security at SCI Greene. Overall, Holbrook's arguments were all rejected by the District Court, and after a careful review of the record, we see no reason to disagree. Accordingly, the District Court properly granted summary judgment to the defendants on Holbrook's retaliation claim.

III.

For the foregoing reasons, we will affirm the District Court's judgment.